[In Bank. — November 28, 1883.]

# PHILLIP BIDDEL, APPELLANT, *v.* B. BRIZZOLARA ET AL., RESPONDENTS.

LIMITATION — ACKNOWLEDGMENT — NEW PROMISE. — To establish a new contract for the purpose of taking a case out of the Statute of Limitations, there must be a promise to pay, or an acknowledgment from which a promise is necessarily implied, and such promise or acknowledgment must be made to the creditor himself.

MORTGAGED PROPERTY — SALE BY MORTGAGOR — AGREEMENT OF PURCHASER TO PAY THE MORTGAGE — SUBROGATION. — In an executory contract for the sale of land, a stipulation by the purchaser to assume and pay as part of the consideration a mortgage upon the land executed by the vendor, is merely an agreement to indemnify him against a judgment for any deficiency that may arise on a foreclosure and sale under the mortgage. It is not an agreement of which the mortgagee can avail himself, except upon the principle of subrogation.

ID. — RESCISSION. — In such a case, the right of subrogation is lost by a rescission of the contract of sale before the commencement of an action to foreclose the mortgage.

APPEAL from a judgment of the Superior Court of the county of San Luis Obispo.

Suit to foreclose a mortgage given to secure the payment of a promissory note. The note fell due June 25, 1875. The complaint was filed March 22, 1881. It was averred in the complaint that on October 22, 1878, Bartolo Brizzolara, the mortgagor and one of the defendants, sold the property to his co-defendant, Austin Roberts. A copy of the contract of sale is set out in the complaint, and recites among other things "that the consideration of said sale is as follows: Eleven thousand

dollars in gold coin to be paid as follows; the party of the second part assumes a mortgage now on said property held by Phillip Biddel," etc. It is averred that after the execution of the contract Roberts resold the property to Brizzolara. It is then alleged "that so late as the 28th day of June, 1880, and subsequent to the reconveyance to him by said Roberts . . . . the defendant Bartolo, by an instrument in writing signed by him, acknowledged said mortgage indebtedness, and that the same was a lien upon said mortgaged property." · The other facts sufficiently appear in the opinion of the court.

*Venable & Scott*, and *Craig & Meredith*, for Appellant.

*W. J. Graves*, and *J. M. Wilcoxon*, for Respondents.

McKinstry, J.—The court below sustained the defendant's demurrer to the complaint. The defendant by his demurrer, among others, took the objection that the cause of action alleged in the complaint was barred by the Statute of Limitations, and the objection that the complaint did not contain a statement of a cause of action.

The complaint contains the allegation : "So late as the 28th day of June, 1880, . . . . the defendant, Bartolo Brizzolara, by an instrument in writing signed by him, acknowledged said mortgage indebtedness, and that the same was a lien on said mortgaged property."

To establish a new contract, made after the statute has run, there must be a promise to pay, or an acknowledgment from which a promise is necessarily implied. (*Biddel* v. *Brizzolara*, 56 Cal. 374.) It is very certain that an actual promise can only be made to the creditor, and it follows that the acknowledgment from which the promise is to be inferred must be made to the creditor. An admission to a stranger of the existence of the debt cannot be construed an acknowledgment to the creditor such as indicates an intention on the part of the person making the admission to hold himself bound to pay, nor is it expressive of his willingness to pay. "An unqualified acknowledgment to a stranger will not take a case out of the statute or constitute a good cause of action." (*Trousdale's Admr.* v. *An-*

*derson*, 9 Bush, 276; see *Kyle* v. *Wells*, 17 Pa. St. 286; *Taylor* v. *Hendrie*, 8 Nev. 243.)

Treating the complaint as a bill for the foreclosure of the mortgage the action was barred by the Code limitation of time within which such an action may be commenced.

In the contract of sale of the mortgaged premises from Bartolo Brizzolara to Roberts, the consideration of the sale is thus stated: "That the consideration of said sale is as follows: Eleven thousand dollars in gold coin, to be paid as follows: The party of the second part assumes a mortgage on said property held by Phillip Biddel, principal and interest amounting to $6,090, and assumes to pay the county and State taxes on said property for the current year, amounting to $136, and this day pays to the party of the first part the sum of $1,000 in cash, the receipt whereof is hereby acknowledged by the party of the first part, and the balance of such purchase money, $3,774.50, is secured to be paid by a promissory note of this date, payable on the 5th day of November, 1878."

The complaint alleges that Roberts, prior to the commencement of this action, reconveyed the mortgaged property to Bartolo Brizzolara, the mortgagor.

It is urged by appellant that although the Statute of Limitations may have run against the mortgage debt, the plaintiff is entitled to a decree for the sale of the mortgaged premises, and to a personal judgment for any balance of the mortgage debt unsatisfied by application of the proceeds of the sale, against Bartolo Brizzolara, *as successor in interest of Roberts;* and that, as the promise of Roberts was made within four years before the commencement of this action, the plea of the statute is not well taken against the action as an action on such promise.

There is no averment in the complaint that Bartolo, by reason of any language in the reconveyance from Roberts, or otherwise, ever promised the latter to pay the mortgage.

It was held in New York, the liability to the mortgagee of the grantee of the mortgagor, who assumes and agrees to pay the mortgage, arises out of the broad doctrine that when one makes a promise to the benefit of a third person, the latter may maintain an action upon it. (*Burr* v. *Beers*, 24 N. Y. 178.) But the case last cited was an action at law, and Denio, J., says

there was abundant authority to the point that the right to a
personal judgment for a deficiency against the grantee of the
mortgagor was not based in the previous chancery decisions in
New York upon the notion of a direct contract between the
grantee of the equity of redemption and the holder of the mort-
gage, but upon the principle that the undertaking of the grantee
to pay off the encumbrance is a collateral security acquired by
the mortgagor, which inures by an equitable subrogation to the
benefit of the mortgagee.   He proceeds to say that the common-
law judgment in the case then before the court obviously could
not be sustained by reference to the doctrine of courts of equity.
He adds, if the judgment could be sustained at all it must be
upon the broad principle that if one person make a promise to
another, for the benefit of a third person, the third person may
maintain an action on the promise.   He admits that upon that
question, there has been a good deal of conflict of judicial opinion,
and that the cases supposed to create a direct obligation from
the purchaser of the equity of redemption to the mortgagee—
"are doubtless subject to some of the criticisms which have
since been applied to them.   Some of the opinions were pure
*obiter dicta,* and in others the case, though presenting the point,
was decided on other grounds." . . . . "Finally the question
came squarely before this court in *Lawrence* v. *Fox,* 20 N. Y.
268, and we there held, with *hesitation* on the part of a portion
of the judges who concurred, while others dissented, that the
action would lie.   We must therefore regard the point as
definitely settled, so far as the courts of this State are con-
cerned."   In view of the very able and exhaustive examination
of the cases by Mr. Justice Comstock, in his dissenting opinion
in *Lawrence* v. *Fox,* we can give but little persuasive effect to
the judgments in that case and in *Burr* v. *Beers.*

   The doctrine of *Burr* v. *Beers*— which has not been generally
approved— can have no place in courts of *equity,* where the
right of the mortgagee to take a decree against the grantee per-
sonally, for a balance unsatisfied by the sale of the premises
mortgaged has been placed upon different ground.   The case at
bar is not an action at law; the framework of the complaint is
that of an equitable pleading, and the prayer is for a sale of the
premises, and for a personal judgment for deficiency against the

defendants Bartolo Brizzolara and Austin Roberts, etc.   Indeed,
under our Code an independent action at law cannot be main-
tained for a debt, whatever its form, secured by mortgage.
(Code Civ. Proc. § 720.)

It has distinctly been decided by the supreme judicial court of
Massachusetts, that no action *at law* by the mortgagee lies on
a promise made to the vendor, by the purchaser of an equity of
redemption, to assume a mortgage on the premises, and to pay
the mortgage note.   (*Mellen* v. *Whipple,* 1 Gray, 317, 324.)

The court in that case say that certain expressions used by
Lord Holt, in *Yard* v. *Eland,* 1 Raym. Ld. 388), and by Bul-
ler, J., in *Marchington* v. *Vernon,* 1 Bos. & P. 101, note), to the
effect that—" on a promise, not under seal, made by A. for a good
consideration to B., to pay B.'s debt to C., C. may sue A." —had
been transferred into various text books, as if it were a general
rule of law.   But Mr. Justice Metcalf remarked, that the maxim
required great modification; because it expresses rather an
exception to a general rule, than the rule itself; and adds that,
by recent decisions of the English courts, the operation of the
rule or maxim is restricted within their narrower limits, and
the general rule to which it is an exception is now more strictly
enforced.   " That general rule is, and always has been, that a
plaintiff in an action on a simple contract must be the person
from whom the consideration of the contract actually moved,
and that a stranger to the consideration cannot sue on the con-
tract.   The rule is sometimes thus expressed: There must be a
privity of contract between the plaintiff and defendant, in order
to render the defendant liable to an action, by the plaintiff, on
the contract."   (Citing cases.)

The learned judge then proceeds to classify the exceptions to
the general rule, and the court are quite certain that the promise
to the mortgagor by the purchaser of the equity of redemption,
to pay off a mortgage, does not constitute an exception.

The classification of the Massachusetts court may not be
exhaustive, but if there be other exceptions they must be such
as stand upon a like footing of reason and justice with those
enumerated.   For convenience the classes of exceptions may be
summarized: First, those in which the action for money had
and received may be maintained, where a debtor has put money

or property as a fund into the hands of one who has promised to pay the debt of him from whom he has received the fund. (But see *Weston* v. *Barker*, 12 John. 282.)  Second, where promises have been made to a father or uncle for the benefit of a child or nephew.

The Supreme Court of Massachusetts were very confident that the case, *Mellen* v. *Whipple*, did not come within any recognized exception.  The defendant there—the purchaser of the equity of redemption—had *no money which in equity and good conscience belonged to the plaintiff, the mortgagee; no funds of the mortgagor, property, money, or credit, had been put into the defendant's hands for the purpose of meeting the plaintiff's claim on the mortgagor.  The sale of the equity of redemption did not lessen the plaintiff's security for the mortgage debt.  (A different reason is given by the Massachusetts court, but it is equally true in the case at bar that the sale of the mortgaged premises did not lessen the plaintiff's security.  Except for the limitation pleaded, he retained a right to a decree for a sale of the mortgaged premises, and to judgment over for any deficiency.)  There was (and is here) no nearness of kin between the parties.  It was held in *Muller* v. *Whipple* that the mortgagee could not maintain an action at law against the purchaser, because there was nothing in the nature of the transaction to take it out of the general rule in the opinion recited.

The doctrine of courts of equity with reference to the liability of the grantee of the mortgagor is very clearly set forth in the cases cited by Mr. Jones in his work on mortgages.  (§§ 740, 770, and especially in *Crowell* v. *Hospital*, 27 N. J. Eq. 650.)

In the case last referred to it was said that a stipulation in a deed of conveyance *inter partes* that the grantee shall assume and pay a prior mortgage on the premises is a contract with the grantor simply for his indemnity, and will not be regarded in law or equity as a contract with the mortgagee or for his benefit.  And in *Halsey* v. *Reed*, 9 Paige, 446, where the purchaser assumed the bond and mortgage, and there was a recital in the conveyance, "the amount thereof (of the mortgage debt) constitutes a part of the consideration of this conveyance and has been deducted therefrom," Chancellor Kent held that this agreement was not intended as an absolute and unconditional promise to pay the

principal and interest to the mortgagor, but an agreement to indemnify the mortgagor against the payment of the mortgage debt

In *Crowell* v. *Hospital* it was adjudged that the right of the mortgagee to a personal decree for a deficiency against ·a subsequent purchaser, whose deed contained such a stipulation, does not result from any fixed or vested right in the mortgagee, arising either from the acceptance of the conveyance of the mortgaged premises by the grantee, or from his obligation to pay the mortgage debt as between himself and his grantor; but it rests merely on the doctrine of courts of equity, that a creditor may have the benefit of all collateral obligations for the payment of a debt which a person standing in the position of surety holds for his indemnity, and in such case the mortgagee may proceed directly against the purchaser, who is ultimately liable, to avoid circuity of action.

In the same case it was held that if the liability of the subsequent purchaser to his grantor to indemnify him against the mortgage debt be extinguished, as between themselves, by a reconveyance before bill for foreclosure filed, the contract of indemnity being thereby put an end to by the act of those who were parties to it, the mortgagee will not be entitled to a decree for a deficiency against such a purchaser, founded on such a stipulation in his deed.

Roberts, the purchaser in the case at bar, is not a party to this appeal. As we have seen, the attempt here is to obtain a decree for the sale of the mortgaged premises, although the Statute of Limitations has barred an action on the mortgage debt, and a personal judgment against the mortgagor; not only *as* mortgagor, but in his capacity of grantee from Roberts, although the deed from Roberts accepted by Bartolo, the mortgagor, contains no language which can be construed a reassumption of the mortgage debt by the latter, or a promise on his part to indemnify Roberts.

It is certain that if plaintiff was not entitled to a personal judgment for deficiency against Roberts, he is not entitled to such judgment against Bartolo Brizzolara. If the complaint had been filed for a foreclosure before the running of the statute, plaintiff would have been entitled to a personal judgment

for deficiency against Bartolo as mortgagor, but to no su-
judgment against Roberts if the reconveyance had been mad
before the filing of the complaint, and to none such against
Bartolo in his distinct character as grantee of Roberts.

The general rule of chancery is that as to strangers to the
contract, the parties may at their pleasure abandon it, and mutu-
ally release each other from its performance.   (2 Spence's Eq.
Juris. 280.)   And the case at bar does not come within any
established exception to the general rule.   The case cannot be
brought within the class in which *trusts* have been enforced by
beneficiaries who have not previously agreed to the creation of
the trust.

. The mortgagee being the representative, and standing in the
place of the mortgagor, to enforce the rights of the latter against
the purchaser, *and having no greater or other equity in himself*, is
entitled only to such remedy as the mortgagor himself had
when the bill was filed.   " In other words, being a stranger to
the contract of the purchaser with the mortgagor, and to the
consideration whereon it was founded, it will be competent for
those who were parties to it to rescind and extinguish it at their
pleasure; and after such rescission and extinguishment, the con-
tract becomes utterly incapable of enforcement."   (*Crowell* v.
*Hospital, supra.*)   The mortgagee can only be entitled to be
subrogated to an *existing* remedy of his debtor, the mortgagor,
upon a legal *existing* stipulation.   But the contract between
Bartolo Brizzolara and Roberts was at an end when the com-
plaint herein was filed.

Even where the rule has been established that the purchaser
is bound by his promise as a promise made for the benefit of
the mortgagee, it is still necessary that the grantor should be
personally liable upon the mortgage in order to render the
grantee liable upon his covenant to the holder of the mortgage
assumed.   In *King* v. *Whitely*, 10 Paige, 465, the grantor of an
equity of redemption in mortgaged premises, neither legally
nor equitably interested in the payment of the bond and mort-
gage, except so far as the same were a charge upon his lands,
conveyed the lands subject to the mortgage, and the conveyance
recited that the grantees therein assumed the mortgage, and
were to pay off the same as part of the consideration.   It was

eld that, as the grantor in that conveyance was not personally
able to the holder of the mortgage, the grantees were not liable
to the holder of the mortgage to pay the same. So late as the
year 1877, *King* v. *Whitley* was approved and its principle
affirmed. (*Vrooman* v. *Turner*, 69 N. Y. 280.) In the case
last cited the previous New York cases, including *Burr* v. *Beers*,
are carefully considered and distinguished.

Under the section of the Code of Civil Procedure (726), "there
can be but one action" for the recovery of any debt secured by
mortgage, in which the court must by its judgment direct the
sale of the encumbered property, and the application of the
proceeds to the debt and costs; and if it appear by the sheriff's
return that the proceeds are insufficient, judgment can be dock-
eted against the mortgagor, etc. Thus, whatever the form of
the debt, the mortgagor can be legally compelled to pay no part
of it, until decree is entered for the sale of the premises mort-
gaged, and the liability which shall then accrue to him is a
liability to pay only a deficiency, which shall appear on the
sheriff's return. The liability of the mortgagor is, therefore,
contingent on the fact that a sale of the mortgaged premises
shall fail to satisfy the debt and costs. It is against this con-
tingency that the purchaser indemnifies him. True, the statute
authorizes a single decree which provides for a sale of the mort-
gaged premises and a subsequent judgment over against the
mortgagor, to which, upon the equitable principle of subroga-
tion, may be added a judgment over against the purchaser
(where the latter has indemnified his vendor) for any deficiency
which may appear from the sheriff's return.

But the return of the sheriff, which makes absolute the per-
sonal liability that was before conditional, and liquidates and
renders certain the damages for which the mortgagor is person-
ally liable, must always follow and depend upon a decree for
and a sale of the premises.

In the case before us the mortgagor did not pay his debt, and
he never became liable to a personal judgment for deficiency,
because no decree for a sale of the premises was ever entered.
Had the title to the premises remained in Roberts, Bartolo
Brizzolara, the mortgagor, would have had no cause of action
against him, nor would the plaintiff, who could have claimed

only to be subrogated to Bartolo's claim against Roberts, such as it was.

Plaintiff cannot take a decree for the sale of the lands in this action, against demurrer or plea of the Statute of Limitations. He cannot take a personal judgment for a deficiency, because the amount of the deficiency, if any, can be ascertained only after decree for the sale of the premises, a sale thereof, and the sheriff's return of said sale.

Judgment affirmed.

SHARPSTEIN, J., MYRICK, J., THORNTON, J., and ROSS, J., concurred.

McKEE, J., specially concurring.— I concur. Where a purchaser of real estate from a mortgagor assumes payment of the mortgage debt, as a part of the consideration of his contract of purchase, there arises out of the transaction, upon the principle of subrogation, a cause of action for the benefit of the mortgagee, which he may enforce, at any time within the life of his mortgage, by an action at law or in equity against the purchaser. But if, as in the case in hand, the mortgagee sleeps upon his remedial rights against the mortgagor and purchaser, until the time of the Statute of Limitations has run against the mortgage debt, and the lien of the mortgage has become extinguished, and the purchaser and mortgagor have rescinded their contract, there is no remedial right which can be enforced at law or in equity by the mortgagee against the mortgagor or the purchaser. (*Simpson* v. *Brown*, 68 N. Y. 355; *Durham* v. *Bischof*, 47 Ind. 211; *Kelly* v. *Roberts*, 40 N. Y. 432.)