WINTERS et al. v. HUB MIN. CO. et al.

(Circuit Court, D. Idaho. May 15, 1893.)

1. CONTRACT.
    A contract made for a corporation to be thereafter organized does not bind it.

2. MORTGAGE—PROPERTY SOLD SUBJECT TO INCUMBRANCES.
    A mortgagee may maintain his action in equity, but not at law, for recovery of the debt, against the grantee of the mortgaged property, who takes it subject to the incumbrances, or who agrees to pay them.

3. SAME—EFFECT UNDER IDAHO STATUTES OF ACTION OF FORECLOSURE.
    When the mortgagee brings his action of foreclosure, he cannot maintain another and separate action for personal judgment on the mortgage debt.

At Law. Action by Winters and others against the Hub Mining Company and others to recover a balance due on a debt after foreclosure of a mortgage given as security therefor. Complaint dismissed.

S. B. Kingsbury and F. E. Ensign, for plaintiffs.
Texas Angel, for defendant Hub Min. Co.

BEATTY, District Judge. The action is at law, commenced in, and removed from, the state court. The plaintiffs having conveyed, by deed, the Hub mine to defendants Atkinson & Crocker, the latter, to secure the unpaid balance of purchase money, exe-

cuted their mortgage on the mine to plaintiffs. Thereafter, the defendant the Hub Mining Company purchased the mine of defendants Atkinson & Crocker, and agreed to assume and pay such mortgage debt. Subsequently, plaintiffs brought their action in the state court against all the defendants, for foreclosure of the mortgage, in which a decree and judgment of foreclosure was granted against defendant company alone, which took its appeal to the state supreme court. After defendant company had perfected its appeal by giving the statutory supersedeas bond, an order was procured from the state trial court for the sale of the mortgaged property under the decree; and after sale a deficiency of the judgment remained, for which a personal judgment is now asked in this action against defendant company, which, alone of defendants, was summoned or appeared in either action. Defendant company, by its answer, alleges the invalidity of the mortgage sale, because the order therefor was procured after appeal taken to the state appellate court, where the cause is now pending, thereby barring this action; that the original sale of the mine to Atkinson & Crocker by plaintiffs was accomplished by fraud; and that said Atkinson & Crocker, in purchasing the mine of plaintiffs, did so only as the agents for the defendant company to be thereafter organized. Plaintiffs' demurrer to the answer, and their motion to eliminate portions thereof, raise the questions to be determined.

1. In the purchase of the mine from plaintiffs by Atkinson & Crocker, the latter could not act as the agents of defendant company, and the purchase must be regarded as made by them for themselves, as it seems well settled that a contract made in the name of or for a corporation to be subsequently organized can in no way bind or affect it. Battelle v. Pavement Co., (Minn.) 33 N. W. Rep. 327; Match Co. v. Hapgood, 141 Mass. 149, 7 N. E. Rep. 22; and Abbott v. Hapgood, 150 Mass. 248, 22 N. E. Rep. 908.

2. That plaintiffs consummated the sale to Atkinson & Crocker by fraud, if an available defense to defendant company, is one that should have been determined by the former action, and cannot be urged here.

3. Can plaintiffs maintain any action for a personal judgment against defendant company upon the mortgage debt? It is clearly alleged in the pleadings of both parties that at the time the sale of the mine was made by Atkinson & Crocker to defendant company it assumed and agreed to pay the balance of the purchase money then remaining unpaid to plaintiffs. So far as observed, there is nothing in the voluminous pleadings to show to whom or how such promise was made, or that it was accepted by plaintiffs. The most that can be inferred is that it was such a promise as is implied when a grantee takes a conveyance with a recital therein that he shall pay the incumbrance on the property purchased. This is the most favorable view that can be taken for plaintiffs, in the absence of any showing that they accepted or relied upon such alleged promise. The liability of the grantee, with whom it exists, and in what forum it may be enforced, under such circumstances,

is a theme which has been most fruitful of discussion, and much difference of opinion, but which it is not deemed necessary to now review at length.

It has been mooted that such grantee is not liable to the mortgagee, either at law or in equity, because there is no privity between them; but it is held that the grantee's promise is made for the benefit of the mortgagor, who can enforce it, while the mortgagee cannot, until it appears that he accepted it; then the grantee becomes principal, the mortgagor his surety, and the mortgagee may maintain a personal action at law against the grantee for the debt,—but that the only way by which such relation and liability of the parties can be created and enforced at law is by the mutual agreement of the three parties. Shepherd v. May, 115 U. S. 511, 6 Sup. Ct. Rep. 119. No such agreement is shown in this case. But, whatever the rule may be at law, it seems now settled by the preponderance of authority in this country that the mortgagee may, without direct acceptance of the grantee's promise, maintain against him his equitable action. This upon the same principle that a creditor, in the collection of his debt, instead of proceeding against the surety, may avail himself of any equities or securities in the hands of, or contracts or promises made by, the principal, for the protection of his surety. So, here, when the defendant made its promises to assume the debt, it became the principal, A. & C. its sureties, and its promise an available asset or contract which plaintiffs, as creditors, can enforce by direct action against defendant. This promise, however, not being made to nor accepted by plaintiffs, so far as appears, no contract or privity exists between them and defendant company, and they can have no legal rights against it. Such is certainly the rule maintained by the supreme court. Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. Rep. 494. Although this case was before referred to, in the ruling upon the first hearing of these questions, in support of the view then taken, plaintiffs' counsel still repeatedly insist in their briefs, and cite state authorities, as they say, ad nauseum, that a legal action may be pursued. In Keller v. Ashford the facts were that the grantee had accepted a deed containing a provision making it "subject, however, to certain incumbrances now resting thereon, payment of which is assumed, by said party of the second part;" and the court, upon page 620, 133 U. S., and page 496, 10 Sup. Ct. Rep., says:

"Upon the question whether the mortgagee could sue at law, there is no occasion to examine the conflicting decisions in the courts of the several states, because it is clearly settled in this court that he could not."

Counsel, in their last briefs, do not say this authority was before misconstrued, but simply claim the contrary, and cite state decisions in support of such claim. A clear understanding that this court aims to be governed by the authority of the supreme court and not by conflicting rulings of the state courts, may save much labor. Without further remark, it is held that plaintiffs cannot

maintain in this court their action in its present form, but, if it is not for other reasons barred, their pleadings must be reformed.

4. It only remains to determine the effect of the former action upon this, and let us not lose sight of the real question. It is not whether the mortgagee may not have a judgment against the grantee for the deficiency remaining after a foreclosure sale, the affirmative of which is so frequently asserted in general terms by counsel, but it is whether such judgment must be taken in the foreclosure proceedings, or may be in a subsequent, separate, distinct, action. These parties having all been in court, where plaintiffs had the right to take against defendant company what they now ask,—a deficiency judgment,—and having there waived, or at least neglected to demand, such right, ought they not to be now precluded? Upon general principles, this would be so. Their former action was in equity, which is a grave reason why all matters connected therewith should there have been determined, for it is the just rule of a court of chancery that, having charge of a cause, it will determine all issues, including legal rights and interests. That court does not tolerate a multiplicity of actions, where all pertinent issues can be disposed of in one. While aiming to mete out justice to all parties having any interest in the subject-matter, it also grants them rest from further litigation. Moreover, a judgment is a bar to another action between the same parties, not only as to those matters specifically determined by it, but also as to all those that might have been. It is clear that, in the former action, plaintiffs could, under the Idaho statute, to be hereinafter referred to, have had what they now ask. It was said by Mr. Justice Kent in La Guen v. Gouverneur, 1 Johns. Cas. 504, that:

"Every person is bound to take care of his own rights, and to vindicate them in due season, and in proper order. This is a sound and salutary principle of law. Accordingly, if a defendant, having the means of defense in his power, neglects to use them, and suffers a recovery to be had against him in a competent tribunal, he is forever precluded."

So, here, if the plaintiffs did not avail themselves of the opportunity under their control, why should they not be forever precluded? But counsel repeatedly urge that this claim is not to be considered in connection with the former action; that it is a simple debt which defendant agreed to pay, and is entirely independent of that action, or what was involved in it; that such action is not to be considered at all, further than to learn what is left unpaid of the original debt; that the result of that action was simply to give defendant a credit on its debt, as you would indorse a credit upon any obligation, leaving open the right to sue for the balance. What was involved in and determined by that action? The court could not order the foreclosure of the mortgage without first finding the existence of a debt secured by it. The debt is the chief basis of the action. Without it, neither the mortgage can exist, nor suit on it be maintained. The debt must have been adjudicated, and upon proper evidence of its creation and existence, and

the debt now sued upon was a part of the same debt involved and considered before. No ipse dixit, that this is a separate claim, can divorce it from the original debt, as independent thereof, or from consideration, as not involved in the former action. Notwithstanding those general principles which generally prevent a multiplicity of actions, a different practice had, under the old rule, obtained in enforcing the collection of debts secured by mortgage. Under the common law the three separate actions of foreclosure, debt, and ejectment were allowed; and, independent of statute, a party could not unite with a foreclosure action a prayer for a deficiency judgment, but was compelled to pursue his remedy by two actions. This system has long been so abolished, in most jurisdictions, that a deficiency judgment may now be had in the foreclosure proceedings.

It would seem that under the rule, to prevent multiplicity of suits, a party should do in one action all the law permits; that under such statutes the deficiency judgment should be docketed in the foreclosure action; and while this seems almost the universal practice now, under those statutes, yet some of the states have held that separate actions may be maintained, but none that they must be. Counsel's query whether, in United States courts, they must not be separate, is answered in the negative by the ninety-second equity rule. Whether, under those state statutes which simply permit the entry of a deficiency judgment as a part of foreclosure proceedings, two separate actions may be maintained, or that litigants should be limited to one, is not, in my view, for determination here. Section 4520, Rev. St. Idaho, adopted from the Code of California, has moved a step beyond all others on this subject. It not only says that a judgment for a deficiency after sale under foreclosure may be docketed, but it also declares that "there can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter," which is followed by the direction that "in such action the court may" order the sale of the incumbered property, and if, upon return of the order, a deficiency exist, docket judgment therefor. This statute not only says there shall be but one action, but also that that one action shall be according to the provisions of the statute, and the steps to be taken in such action are there clearly defined. When it is borne in mind that all these remedial statutes were for the purpose of alleviating the expenses and annoyances of litigation, and that under some prior statutes of other states, permitting a full determination in one action, some of the courts still held that the prosecuting of two might continue, it would seem that it cannot be doubted that the legislature, through the provision that there can be but one action, designed to absolutely prevent conservative courts from permitting more. Such, I think, is the construction given this statute by the courts of California and Idaho, and their construction this court must follow. Bank v. Williams, (Idaho,) 23 Pac. Rep. 552; Ould v. Stoddard, 54 Cal. 614;

Bartlett v. Cottle, 63 Cal. 366; Biddel v. Brizzolara, 64 Cal. 354, 30 Pac. Rep. 609; Brown v. Willis, 67 Cal. 235, 7 Pac. Rep. 682; Hall v. Arnott, 80 Cal. 348, 22 Pac. Rep. 200; and Barbieri v. Ramelli, 84 Cal. 155, 23 Pac. Rep. 1086. Plaintiffs' counsel, in the citation of authorities, do so, apparently, regardless of the statutes under which they are made,.and as they cite some of the above as supporting their view, a further notice of some of them seems demanded.

In 23 Pac. Rep. the defendant was the surety of the maker of a note, who, to secure him, gave to the payee a mortgage on realty. The payee then assigned the note and mortgage to the plaintiff, who brought an action against defendant for a personal judgment, The Idaho court dismissed the action, and, while the direct question here was not there involved, it was held the statute must be followed, and cited California decisions. In 54 Cal. it appears a personal judgment had been recovered in Ohio on a note secured by mortgage on realty in California, and execution returned nulla bona, whereupon the foreclosure action was commenced. The court clearly held that but one action could be permitted, and that the bringing of one is the waiver of the other; that the object of the statute is to avoid a multiplicity of suits, and thus to change the old rule allowing a suit of foreclosure, and a separate one on the debt. This case has not been overruled, but has since been referred to with approval by that court. In 64 Cal. 358, 30 Pac. Rep. 609, it is said that "under our Code an independent action at law cannot be maintained for a debt, whatever its form, secured by mortgage." But, without reviewing further the above-cited cases, it may be remarked that, while in none of them the facts are just as in this case, yet in all, whether it be a second action, or one for personal judgment, the same conclusion is reached,—that but one action can be had in such cases, which is that of foreclosure, with the right to docket therein any judgment for a deficiency after sale. Counsel cite Mauge v. Heringhi, 26 Cal. 577, but do not note the fact that it was an action upon a balance due after sale of pledged property pursuant to a common-law notice. Certainly, in such cases, action for deficiency could be had, for the simple reason that no action had been before had, and the court said that the action "is wholly unaffected" by the statute in question. Many citations are made by plaintiffs' counsel, including numerous Michigan cases; but, after careful examination, if any of them discussed or decided the question involved in this action, it is overlooked. Moreover, the Michigan statute under which all the decisions there were made only provides that "the court may decree payment of the balance of such debt remaining unsatisfied after the sale of the mortgaged premises," and has not the provision of our statute,— that there can be but one action. It is unnecessary to consider the effect of the pendency in the supreme court of the state of the foreclosure action, for it must be held the plaintiffs cannot maintain this action. It is therefore ordered that the complaint be dismissed.