[Civ. No. 1649.   Third Appellate District.—July 27, 1917.]

# O. W. SHERWOOD, Respondent, v. A. J. LOWELL, Appellant.

MORTGAGE — CONVEYANCE OF PROPERTY TO CORPORATION — PAYMENT — ORAL PROMISE OF GRANTEE—STATUTE OF FRAUDS.—Where mortgaged property was conveyed to a corporation, an oral agreement made by the principal stockholder with the holder of the note that he would pay the note is void because not in writing and for lack of consideration.

ID.—PAYMENT OF INTEREST—CREDIT ON BILLHEAD OF CORPORATION—INSUFFICIENT MEMORANDUM.—A payment of interest on the note by such stockholder, evidenced by a credit for the amount in a memorandum in defendant's handwriting on the corporation's billhead, containing charges against the holder of the note for merchandise purchased from the corporation, is not a sufficient memorandum to satisfy the requirements of subdivision 2 of section 1624 of the Civil Code, on the theory that the stockholder treated the name of the corporation printed on the billhead as his own or adopted it as his signature.

ID.—STATUTE OF LIMITATIONS—NEW PROMISE—INSUFFICIENT WRITING. Such a writing is not sufficient to take the note out of the operation of the statute of limitations, under section 360 of the Code of Civil Procedure, since an acknowledgment of a debt from which a promise to pay may be implied must be a direct, distinct, unqualified, and unconditional admission of a previous subsisting debt, for which the party is liable and willing to pay.

ID.—PART PAYMENT INSUFFICIENT.—Under section 360 of the Code of Civil Procedure, a part payment is not sufficient in itself to take a debt out of the statute of limitations, unless there is a writing signed by the party to be charged, showing an acknowledgment of, or an express promise to pay, the debt.

ID.—ASSUMPTION OF MORTGAGE DEBT BY CORPORATION GRANTEE—GUARANTOR AGAINST DEFICIENCY.—Where mortgaged property is conveyed to a corporation, and its principal stockholder assumes and agrees to pay the debt, the corporation or stockholder becomes nothing more than a guarantor of or indemnifier against any deficiency that might arise upon a foreclosure sale of the mortgaged premises.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a motion to set aside such judgment.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

Robert Duncan, for Appellant.

Preston & Preston, and C. H. McConaughy, for Respondent.

HART, J.—The action is on a promissory note executed March 30, 1908, to plaintiff, by J. W. Lowell, brother of defendant, and payable one year after date. It is alleged in the complaint that, in consideration of the maker of the note transferring to defendant "certain property and business," defendant agreed to pay said note; that, "on March 30, 1909, the thirtieth day of March, 1912, and the thirtieth day of March, 1913, pursuant to said agreement, defendant did on said dates pay to plaintiff the interest due on said promissory note"; that, "thereafter on May 5, 1913, at the said town of Westport, defendant agreed in writing to and with plaintiff to pay said promissory note and did then and there, in writing, make a payment on said promissory note to said plaintiff in the sum of eighty dollars." Judgment is prayed for the sum of one thousand dollars and interest from March 30, 1913.

Defendant, in his answer, denied entering into the alleged agreement and denied that any such agreement was made; denied the alleged transfer of property by J. W. Lowell to defendant, and denied the alleged payment of money as interest or otherwise; denied the alleged agreement of May 5, 1913, and denied, on information and belief, that the said sum of one thousand dollars or any other sum is due or unpaid on said note. For further answer defendant pleaded sections 337, 339, and 343 of the Code of Civil Procedure in bar of the action.

The cause was tried by the court without a jury and plaintiff had judgment as prayed for in the complaint. Defendant moved the court to set aside the judgment and enter a new and different judgment in favor of defendant and against plaintiff. The case is here on appeal from the judgment and the order denying said motion.

The execution of the note by J. W. Lowell is not denied. The court made the following findings:

"II. That it is true that thereafter and on the 30th day of March, 1911, at the town of Westport, county of Mendocino, state of California, the said J. W. Lowell and said de-

fendant A. J. Lowell, with the consent of the said plaintiff (did) represent to said plaintiff that he, the said J. W. Lowell would transfer all of his property and said business to the defendant, and the defendant A. J. Lowell then and there did agree to and with the said plaintiff to pay and discharge the payment of said promissory note and interest due thereon, and that may become due thereon, but that the said J. W. Lowell, instead of transferring said property and business to the said defendant A. J. Lowell, transferred the same to the Westport Mercantile Company, of which the defendant A. J. Lowell is the largest stockholder, and that the said J. W. Lowell and the defendant A. J. Lowell did represent to the said plaintiff that he, the said A. J. Lowell, was and is the owner of said property and business, but that said agreement by said A. J. Lowell to pay said note was not in writing but was oral.

"III.   That it is true, that pursuant to said agreement, the said A. J. Lowell did assume and agree to pay said promissory note and interest thereon, and that on the 30th day of March, 1911, the said A. J. Lowell did pay the interest on said promissory note, which payment is evidenced by a memorandum in writing on the back of said promissory note in the handwriting of said defendant, A. J. Lowell, which said memoranda is as follows: 'Recd to Mar. 30th, 1911.' But that the name of A. J. Lowell does not appear on said memorandum or in connection with it.

"IV.   That it is true, that on the 5th day of May, 1913, at the town of Westport, county of Mendocino, state of California, the said defendant, A. J. Lowell, did pay to plaintiff on account of interest on said promissory note the sum of eighty dollars, which payment is evidenced by a written memorandum in the handwriting of said defendant, A. J. Lowell on the billhead of the Westport Mercantile Company, and that the said defendant A. J. Lowell represented to the said plaintiff that he, the said A. J. Lowell was the Westport Mercantile Company, and that the payment so made, was made by the said defendant, A. J. Lowell, personally; that the said written memorandum of said payment is as follows: 'by interest $140'; that the said written memorandum is not nor is the said statement on the billhead of the Westport Mercantile Company signed or subscribed by the said

A. J. Lowell; that the name of the Westport Mercantile Company does not appear thereon except in printing.''

The uncontradicted evidence shows: That the Westport Mercantile Company is, and has been since its organization on June 29, 1907, a corporation, duly established as such under the laws of the state of California; that its principal place of business was and is at the town of Westport, in Mendocino County, and that at said town it has carried on during the whole of the period of its existence a general merchandise business and the business of purchasing and selling timber, for which specific purposes, among others, as declared in its articles of incorporation, it was organized; that the stockholders of said corporation were and are the defendant, A. J. Lowell, F. C. Hunter, and C. E. Gordon, the defendant being the owner of three-fifths of the stock therein; that the plaintiff did business with said corporation. It is likewise further shown that the corporation had, prior to the particular transaction giving rise to this action, borrowed the sum of one thousand dollars from the plaintiff and that the latter held its promissory note therefor, which note had been paid at the time of the trial of this action; that, on March 30, 1908, one J. W. Lowell borrowed the sum of one thousand dollars from the plaintiff and executed and delivered to the latter his promissory note for said sum, made payable one year after date, and, as security for the payment of said note, executed and delivered to the plaintiff a mortgage on a certain piece of land situated in Mendocino County and upon which there was then standing a two story building.

The parties to the action stipulated that these facts were true: That J. W. Lowell, at the time of the making of the note last referred to and the execution of the mortgage to secure the payment of said note, was the owner of the land so mortgaged; that, after the said land was so mortgaged, J. W. Lowell conveyed the same to his wife, Mrs. E. J. Lowell; that, on the eighth day of August, 1910, Mrs. Lowell conveyed the land, by a grant, bargain, and sale deed, to the Westport Mercantile Company. While this deed was, as was, of course, the deed to Mrs. Lowell, subject to the mortgage, it, like the latter deed, contained no agreement that the grantee would assume the mortgage debt. And, at the time of the conveyance by Mrs. Lowell to the corporation, the note and mortgage were still subsisting obligations—that is, the

statute of limitations had not run against them. In this connection, it may parenthetically be stated, although a matter of no special consequence, so far as the decision here is concerned, further than that it tends to show that the conveyance to Mrs. Lowell involved a *bona fide* transaction, the record shows that Mrs. Lowell obtained the mortgaged premises from her husband as the result of an award made by certain arbitrators "in the matter of settlement of community property of J. W. Lowell and E. J. Lowell." It is not made to appear what occasioned the arbitration or the reason for the settlement and the division between them of the community property rights of said parties. However, after the mortgaged land had been conveyed to the corporation, and, after action on the note and mortgage given to the plaintiff by J. W. Lowell had become barred by the statute of limitations, the defendant, A. J. Lowell, paid the plaintiff the sum of $140, of which $60 was in payment of interest then due on the note from the corporation to the plaintiff and $80 in payment on the J. W. Lowell note. These payments were noted as a credit on a written statement of an account due from the plaintiff to the corporation, which statement is referred to by the court in finding 4 of its findings as a "written memorandum of the payment" of the interest due on the note in suit. As stated, said "memorandum" was an ordinary statement or bill rendered against the plaintiff for merchandise purchased by him of the corporation, and the printed part thereof read as follows:

"Statement Westport Mercantile Co. Westport, Cal......
191.. Sold to ......" The date, "May 5," and the figure "3" after the figure "191" and all items after the words "Sold to" were in the defendant's handwriting, but his own name nowhere appears therein.

It is upon this writing that the plaintiff relies for a recovery against the defendant, his claim being that said "memorandum" created a new promise, within the intent of section 360 of the Code of Civil Procedure, against which the statute has not run, since the action founded upon the promise so created was brought within four years after the date of the "memorandum." It is argued, in purported support of this position, that, although the defendant's name is nowhere attached to said "memorandum," the document is, nevertheless, within the meaning of said section 360, an "acknowledg-

ment" from which a new promise is implied and created, and that "a printed name is sufficient to satisfy the statute where the paper is delivered under circumstances showing an intention to regard the printed name as a person's own, and so in effect to adopt it as his signature."

Thus it will be observed that, since, concededly, the note was barred by the statute of limitations after March 30, 1913, the right to maintain this action must depend upon whether the finding of a new promise to assume and pay the indebtedness evidenced by the note in question is supported by the evidence.

Section 360 of the Code of Civil Procedure, *supra,* provides: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby."

The defendant contends that the "written memorandum" referred to is not such a writing as will take the case out of the operation of the above section; that it is insufficient under the terms of the statute of frauds to charge either the defendant or the corporation with liability for payment of the debt; that in no event can either the defendant or the corporation be held liable to the plaintiff, since the uncontroverted evidence shows that there was no privity of contract between either and the plaintiff.

In the first place, we express the opinion that the evidence, as it is presented by the record here, is wholly insufficient to sustain that part of finding No. 2 which reads as follows: "That it is true that thereafter and on the 30th day of March, 1911, at the town of Westport, . . . the said J. W. Lowell and said defendant, A. J. Lowell, with the consent of the said plaintiff, (did) represent to said plaintiff that he, the said J. W. Lowell, would transfer all of his property and said business to the defendant, and the defendant, A. J. Lowell, then and there did agree to and with the said plaintiff to pay and discharge the payment of said promissory note and interest due thereon, and that may become due thereon."

The only testimony that we have been able to find in the record from which a possible inference might arise that the agreement referred to in said finding was made, other than the written statement of account rendered to the plaintiff by the corporation and above described, is the following given

by the plaintiff: That when A. J. Lowell paid the interest on the note on the thirtieth day of March, 1911, a conversation took place between him and A. J. Lowell concerning said payment. "Q. State what was said and where and who was present at the time the payment was made. A. I can't give the exact words. Q. Well, in substance, what you understood what was said? A. We were talking about the note and Mr. A. J. Lowell was to pay the note and he paid me that interest the first year. Q. You mean in 1911? A. Yes, sir. Q. That was the first interest paid by A. J. Lowell? A. Yes, sir. Q. *At that time was there anything said about releasing J. W. Lowell?* A. Yes, sir. Q. Since that time, who have you looked to for the payment of this note? A. Mr. A. J. Lowell. Q. Now, since 1911, were any other payments made by Mr. A. J. Lowell? A. Yes, sir. Q. When was the next payment made? A. Some time in 1912." He testified that a further payment was made in 1913, and said he had a writing to show said payment, referring to the statement (above referred to) showing the account between plaintiff and the corporation for merchandise furnished the former by the latter and which contained the credit item of $140 for interest then due on the two notes—the note in suit and the note of the corporation to the plaintiff.

On redirect examination, the plaintiff testified that, near the time at which J. W. Lowell and his wife accepted the award made by the arbitrators who had been selected to adjust and settle their respective rights in their community property, A. J. Lowell told him that J. W. Lowell had assigned the mortgaged premises to him and that he (A. J.) had received said property.

It will be observed that in the above testimony the plaintiff does not say that A. J. and J. W. Lowell entered into the agreement referred to in finding No. 2. Nor is there to be found anywhere in the record any testimony that A. J. and J. W. Lowell entered into any such agreement. The most that can be said of the above testimony of the plaintiff or the effect thereof is that A. J. Lowell, whether for himself or for J. W. Lowell or for the corporation is not made to appear therefrom, paid, as it accrued, the interest on the note on three several occasions, and that the plaintiff had looked to A. J. Lowell for the payment of the note. The testimony

obviously falls far short of upholding the part of finding 2 above quoted herein.

Nor is there any proof to sustain the remaining vital portion of said finding, viz.: "That the said J. W. Lowell, instead of transferring said property and business to the said defendant, A. J. Lowell, transferred the same to the Westport Mercantile Company, of which the defendant, A. J. Lowell, is the largest stockholder, and that the said J. W. Lowell and the defendant, A. J. Lowell, did represent to the said plaintiff that he, the said A. J. Lowell, was and is the owner of said property and business," etc.

The uncontradicted evidence is, as has heretofore been shown, that it was not J. W. Lowell, but his wife, E. J. Lowell, who, having previously been awarded the mortgaged premises as her share of the community property in the settlement by the arbitrators of the community rights of herself and husband, transferred and conveyed the said premises to the Westport Company.

The only other finding which is of a fact material or vital to the judgment is the finding that the payment of the interest on the note in the sum of eighty dollars, on May 5, 1913, is "evidenced by a written memorandum, in the handwriting of the defendant . . . on the billhead of the Westport Mercantile Company," and that the "said written memorandum of said payment is as follows: 'by interest, $140'; that the said written memorandum is not nor is the said statement on the billhead of the Westport Mercantile Company signed or subscribed by the said A. J. Lowell; that the name of the Westport Mercantile Company does not appear thereon except in printing"; and that "the said defendant represented to the said plaintiff that he, the said A. J. Lowell, was the Westport Mercantile Company, and that the payment so made was made by the said defendant, A. J. Lowell, personally."

There is no evidence in the record which sustains or warrants the finding that A. J. Lowell represented to the plaintiff that he (the said Lowell) "was the Westport Mercantile Company." As to the fact so found, the only testimony disclosed by the record which might be said to have any bearing whatever thereon is that of the plaintiff, who merely stated, referring to the corporation, that, *as he understood it,* A. J. Lowell was "the whole thing—manager, owner and everything else." Obviously, that statement involves only the conclusion

of the witness and is wholly insufficient to support the finding referred to. In this connection, it may be observed that the articles of incorporation of the corporation and the uncontradicted testimony of A. J. Lowell show, or tend to show, that, while the said Lowell was the principal stockholder therein, there were others who owned considerable stock in the concern.

Even conceding that the evidence shows that the defendant, on the thirtieth day of March, 1911, promised to pay the note, which we hold is not so, the promise so found to have been made, not having been made under or upon any of the conditions specified in subdivisions 1, 2, and 3 of section 2794 of the Civil Code, is wholly void because not in writing. (Civ. Code, sec. 1624, subd. 2.) The uncontradicted evidence shows and the court finds, as has been already pointed out, that the mortgaged premises were conveyed to the corporation and not to the defendant, and that such conveyance was made some seven months prior to the making of the alleged promise. Nor is there any evidence or even pretense that the defendant received any other property of J. W. Lowell to be devoted to any of the purposes mentioned in section 2794 of the Civil Code. Hence, furthermore, there was no consideration moving to the defendant for the agreement. If made at all, it was a mere *nudum pactum*. It follows, of course, that the finding that such a promise was made by the defendant, at the time mentioned in the findings, is without any force in the determination of this appeal, and there is therefore no necessity for further consideration of it. But the basis of the present action is not the alleged agreement of March 30, 1911, which was made, if at all, before the plaintiff's right of action on the note or original obligation had been lost by lapse of the time limited by the statute within which he might have sued on said note. His action is, as seen, founded entirely on the alleged written memorandum mentioned in finding 4, which was made after the statute had barred his right to sue on the note. It is upon this alleged new promise that the plaintiff relies for a recovery. But it is clear to us that the alleged memorandum is wholly insufficient, under the terms of the second subdivision of section 1624 of the Civil Code and those of section 360 of the Code of Civil Procedure, either to charge the defendant with liability for the payment of the debt or to take the case out of the

operation of the statute of limitations.    Indeed, the first prop-
osition is clearly settled by the finding that the memorandum
was not signed by the defendant.    Section 1624, subdivision
2, *supra,* provides that a special promise to answer for the
debt, default, or miscarriage of another, to be valid, must
be in writing and subscribed by the party to be charged, or
by his agent.    As has been shown, there is no evidence to
support the finding that the defendant was himself the cor-
poration, and there is no evidence or direct finding that the
defendant treated the name, "Westport Mercantile Com-
pany," as printed on the statement or memorandum, as his
own or in effect adopted it as his signature.    If, as has been
suggested, said memorandum was delivered by the defendant
under circumstances justifying the *inference* that the defend-
ant's intention was to treat the printed name as his own and
to adopt it as his signature, then we reply that a mere infer-
ence arising from circumstances reasonably amenable to dif-
ferent meanings, or which will, with equal force, lead to either
one of two opposite or inconsistent conclusions, does not
measure up to the requirements of the statute.    The circum-
stance that the written part of the statement was in the hand-
writing of the defendant, together with the circumstance that
the latter had at a previous time orally said to the plaintiff
that he would pay the debt, may well be said to justify the
inference that the defendant intended to adopt the printed
name of the corporation as his own.    On the other hand, the
circumstances that the memorandum was on a billhead of the
corporation, that all the debit items in the statement were
for merchandise purchased from the corporation by the plain-
tiff, that the name of the defendant was neither printed nor
written on the statement, and that the mortgaged property
was not conveyed to the defendant but to the corporation, cer-
tainly justify the inference that the transaction was intended
and understood to be that of the corporation and not the per-
sonal transaction of the defendant.

The statute plainly contemplates that, to charge a third
party with liability for the debt of another, the writing so
relied upon must not only contain a direct and unequivocal
assumption of the obligation, but it must be subscribed by the
party to be charged.    As seen, the only feature of the memo-
randum here which relates in any way to the note in suit or
the indebtedness evidenced thereby is the item of credit for

interest in the words: "By interest, $140." There is not another word or line contained therein which tends to show any contract by which the defendant or any other person agreed to stand for the debt which is primarily responsible for this action. The writing is not a memorandum of a promise or agreement to do anything, much less one to assume the debt which is the foundation of this suit. The object of the statute of frauds is to preserve, in the most certain, definite, and enduring form, evidence of the terms to which persons who have entered into contractual relations as to certain specified kinds of transactions have mutually agreed, and thus to prevent the imposition of fraud and the practicing of perjury in such transactions, and certainly it cannot be said that the object of the statute may be accomplished, or fraud or perjury prevented or the practice of either minimized, where, as here, no promise or agreement can be shown or the purpose or significance of the writing relied on even understood in the absence of parol evidence explanatory thereof.

Nor is the writing sufficient to take the case out of the operation of the statute of limitations. While it is true that in an early case, *Barron* v. *Kennedy,* 17 Cal. 574, 577, it was held that "part payment has always been held sufficient to take the debt, on which it is made, out of the statute," the language so used must be considered in the light of the situation presented to the court—that is to say, the language quoted states the rule correctly where it is considered in connection with the fact, if it be a fact, that there is a writing, signed by the party to be charged, showing an acknowledgment of or an express promise to pay the debt. If there be no such writing of any kind or character, then part payment is insufficient to take the debt out of the statute. If the rule were otherwise, then to section 360 of the Code of Civil Procedure would be added a qualification which it does not contain and which is not within the fair and reasonable import of its language.

As we have shown, and as is obvious, there is no direct and distinct promise to pay the debt contained in the memorandum, and an acknowledgment of a debt from which a promise to pay may be implied must be a direct, distinct, unqualified, and unconditional admission of a previous subsisting debt which the party is liable and willing to pay. "If

there be accompanying circumstances which repel the promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no *certain* conclusion, *but at best to probable inferences, which may affect different minds in different ways,* we think they ought not to go to the jury as evidence of a new promise to revive the cause of action." (Mr. Justice Story, in *Bell* v. *Morrison,* 1 Pet. (U. S.) 362, [7 L. Ed. 174]; see, also, *Biddel* v. *Brizzolara,* 56 Cal. 374, 382; *McCormick* v. *Brown,* 36 Cal. 180, 185, [95 Am. Dec. 170]; *Pierce* v. *Merrill,* 128 Cal. 473, 476, [79 Am. St. Rep. 63, 61 Pac. 67]; *Rodgers* v. *Byers,* 127 Cal. 528, [60 Pac. 42]; *Visher* v. *Wilbur,* 5 Cal. App. 562, 570, 571, [90 Pac. 1065, 91 Pac. 412].) The rule as thus stated involves the test determinative of whether an acknowledgment by the *debtor himself* is such as to justify the implication of a promise to pay, and in this state it has been repeatedly held that the rule will be the more rigidly applied where the acknowledgment even by the debtor himself is after the statute has run and thus a *new promise* sought to be established than where the acknowledgment sufficient to continue the life of the obligation is made before the statute has run. This being the rule as to the debtor himself, it seems to us that an acknowledgment by a third party, particularly after the debt has been barred, should be so clear, distinct, direct, and unequivocal as necessarily to raise the implication of a promise by him to pay the debt. Indeed, it seems to us that in such a case, where, of course, none of the conditions specified in section 2794 of the Civil Code exists, to bind a third party, a distinct, direct, and unconditional express promise in writing should be required. In this case, however, the circumstances accompanying the making of the alleged "memorandum in writing" furnish the only ground upon which the claim may rest that the defendant either promised to pay or made an acknowledgment of the debt, and, as we have shown and as must readily be apparent upon an examination of those circumstances, they "lead to no certain conclusion, but at best to probable inferences which may affect different minds in different ways."

The foregoing views and the conclusion necessarily following therefrom are decisive of this case; but, while not necessary to do so, we will, nevertheless, consider, briefly, another proposition advanced by the appellant in impeachment of the

judgment, viz.: "That if the appellant here, or even the West-
port Mercantile Company, had assumed and agreed to pay
the mortgage of this plaintiff, neither would become anything
more than a guarantor of or indemnifier against any de-
ficiency that might arise upon a sale of the mortgaged prem-
ises." This proposition follows from the fact that the sole
remedy of the mortgagee is in an action to foreclose the mort-
gage (Code Civ. Proc., sec. 726), and, therefore, the liability
of the mortgagor wholly contingent on the fact that a sale
of the mortgaged premises shall fail to satisfy the debt and
costs. It is, so it is contended, against this contingency that
the purchaser indemnifies him. "True, the statute author-
izes a single decree which provides for a sale of the mortgaged
premises, and a subsequent judgment over against the mort-
gagor, to which, upon the equitable principle of subrogation,
may be added a judgment over against the purchaser (where
the latter has indemnified his vendor) for any deficiency
which may appear from the sheriff's return." (*Biddel* v.
*Brizzolara,* 64 Cal. 354, [30 Pac. 609] ; see, also, *Roberts* v.
*Fitzallen,* 120 Cal. 482, [52 Pac. 818] ; *Ward* v. *De Oca,* 120
Cal. 102, [52 Pac. 130].)

We think, assuming that an agreement either by the de-
fendant or the corporation to assume the mortgage debt was
made, this case comes clearly within the doctrine of those
cases.

But a further proposition, which is supported by the rec-
ord and must be sustained, may briefly be considered, viz.:
That, since the conveyance of the property to Mrs. Lowell
by her husband occurred after the premises had been mort-
gaged to the plaintiff without an agreement by her contained
in the deed or otherwise that she would assume or pay the
mortgage debt, and she under these circumstances later
transferred the property to the corporation, the appellant,
conceding that he is or then was the Westport Mercantile
Company, and personally bound by its acts, is not bound or
liable at all to the respondent for the reason that there is
no privity of contract between them. Nor (for the same rea-
son) would the corporation be so bound. In other words,
if it be true that a purchaser of an equity of redemption or
the mortgaged premises may bind himself to pay the mort-
gage debt as a part of the consideration of the transfer, still
in this case neither the defendant nor the corporation would

be liable to the plaintiff even as a guarantor of or indemnifier against any deficiency judgment against the mortgagor, for the reason that his or its grantor was not personally liable for the debt or deficiency arising upon a sale of the property under foreclosure. This proposition is plainly sustainable upon reason and principle, but it has been declared by numerous cases to be the correct doctrine.

In *Biddel* v. *Brizzolara,* 64 Cal. 354, 361, [30 Pac. 609, 612], it is said: "Even where the rule has been established that the purchaser is bound by his promise as a promise made for the benefit of the mortgagee, it is still necessary that the grantor should be personally liable upon the mortgage in order to render the grantee liable upon his covenant to the holder of the mortgage assumed." (See, also, *Ward* v. *De Oca,* 120 Cal. 102, [52 Pac. 130].)

In *King* v. *Whitely,* 10 Paige (N. Y.), 465, the grantor of an equity of redemption in mortgaged premises, neither legally nor equitably interested in the payment of the bond or mortgage, except so far as the same were a charge upon his lands, conveyed the mortgaged property subject to the mortgage, and the conveyance recited that the grantees therein assumed the mortgage and agreed to pay the same as a part of the consideration for the conveyance. It was held that, "as the grantor in that conveyance was not personally liable to the holder of the mortgage, the grantees were not liable to the holder of the mortgage to pay the same." That case was approved in the year 1877 in *Vrooman* v. *Turner,* 69 N. Y. 280, [25 Am. Rep. 195], and later in the cases of *Biddel* v. *Brizzolara, supra,* and *Ward* v. *De Oca, supra.*

At all events, since the case for the plaintiff derives its only support from the writing or statement in writing of May 5, 1913, and, as we hold it insufficient to bind the defendant or legally charge him with the debt sued for and is, furthermore, insufficient to take the debt out of the operation of the statute of limitations, the judgment and the order appealed from must be reversed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.