[L. A. No. 1035.  Department One.—August 30, 1906.]

ALBERT J. CRISMAN, and DWIGHT N. LOWELL, Executors of Will of Frederick S. Crisman, Deceased, Appellants, v. J. L. LANTERMAN, Executor of Will of Ammoretta J. Lanterman, Deceased, J. L. LANTERMAN, ROY S. LANTERMAN, FRANK D. LANTERMAN, et al., Respondents.

MORTGAGE—RELEASE TO MAKE TRUSTEE SALE EFFECTIVE—RIGHTS OF MORTGAGOR—ABSENCE OF CONSENT—NON-LIABILITY FOR DEFICIENCY. —Land mortgaged is primarily liable for the debt, and the mortgagor is entitled to insist that the mortgagee shall not by releasing the land which should be made to pay the debt throw upon him a personal liability therefor; and where the mortgage·was released in order to make a sale under a deed of trust effective, in being clear of all encumbrances, the estate of the deceased mortgagor, not consenting thereto, cannot be made liable for any deficiency arising in application of the proceeds of sale to the mortgage debt.

ID.—MORTGAGE NOT SUPERSEDED BY DEED OF TRUST — INTENTION OF PARTIES.—A deed of trust does not necessarily supersede or merge a prior mortgage.  Whether such merger takes place or not is a question of the intention of the parties, and where the language of.the deed of trust indicates an intention that the mortgage should continue to exist, it cannot be deemed that the new security supplanted or merged the old.

ID.—FINDING—ABSENCE OF CONSENT TO RELEASE—AGREED STATEMENT— EVIDENTIAL FACTS—ULTIMATE FACT.—A finding of the ultimate fact of the absence of the consent of the estate of the deceased mortgagor to the release of the mortgage was properly made where an agreed statement of facts set forth merely evidentiary matter from which the ultimate fact might be found either way.

ID.—ESTATE NOT ESTOPPED—ATTENDANCE OF EXECUTOR AT SALE—ACTION IN INDIVIDUAL INTEREST.—Where the proposed sale by the trustee clear of all encumbrances was attended by the executor, who was also interested as co-maker on one of the notes secured, it in no way infringed upon the rights of the estate, even if it be assumed that he attended it also in his representative capacity.  The release of the mortgage by the voluntary act of the mortgagee would not injure, but would benefit, the estate; and the non-action of the executor as such could not mislead the mortgagor or estop the estate from showing that the release was not consented to by the estate, where it appears that the sole action taken by him was for his own individual .interest, in demanding that the proceeds of sale be applied first to his own debt.

ID.—EFFECT OF RELEASE—RESERVATION OF LIABILITY OF ESTATE—ESTOP-
PEL OF MORTGAGEE.—The fact that the executors of the mortgagee,
in executing the release of the mortgage, expressly reserved all
rights against the estate, of the deceased mortgagor for the unpaid
balance, did not prevent the release from being effective, and the
circumstances under which it was given estop the executors of the
mortgagee from denying that the release was executed as against
the purchaser under the deed of trust.

ID.—APPLICATION OF PROCEEDS OF SALE.—The voluntary application of
the proceeds of the sale by agreement of other parties cannot bind
the purchaser. The payment not being voluntary, neither the
debtor nor the creditor had the right to direct the application
of the proceeds, but it was to be made by the court according to
the equities of the case.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Frank G. Finlayson, for Appellants.

M. W. Conkling, and Charles T. Howland, for Respondents.

SLOSS, J.—On June 18, 1895, Ammoretta J. Lanterman
made her promissory note for five thousand dollars, payable to
Frederick S. Crisman or order, on or before ten years after
date. With the note, and as security for it, she delivered to
Crisman a mortgage of the south eighty acres of lot 9 of the
Rancho la Cañada, in Los Angeles County, and certain shares
of stock in a water company. The property mortgaged stood
of record in the name of Ammoretta J. Lanterman, but in fact
it belonged to Roy S. Lanterman, her son, and the note and
mortgage were given in consideration of a loan of five thou-
sand dollars by Frederick S. Crisman to Roy S. Lanterman.
These facts were known to the lender. In 1900 Ammoretta
J. conveyed to Roy S. Lanterman the mortgaged property. In
the meanwhile three other notes had been made by members
of the Lanterman family to Crisman,—to wit, a note for one
thousand dollars, dated January 6, 1896, payable on or before
eight years after date; à note for five hundred dollars, dated
March 20, 1896, payable on or before eight years after date;
and a note for two thousand eight hundred dollars, dated July
1, 1896, payable on or before six years after date. All of these

three notes were signed by Ammoretta J. and Roy S. Lanterman, and the last, the one for two thousand eight hundred dollars, bore in addition the signature of J. L. Lanterman, the husband of Ammoretta.

In October, 1900, Frederick S. Crisman died, leaving a will by which Albert J. Crisman and Dwight N. Lowell were named executors. The will was duly proved and letters testamentary issued.

On August 1, 1902, all of the principal of said four notes and some of the interest being unpaid, Roy S. Lanterman made a deed of trust to Albert J. Crisman, as trustee, whereby, as security for these notes, he conveyed to said Crisman lot 9 of the Rancho la Cañada, with the shares of water-stock above mentioned. The property described included that which was covered by the mortgage given in 1895. The deed of trust, in which the grantor and his wife were described as parties of the first part, Albert J. Crisman as party of the second part, and the executors of Frederick S. Crisman's will as parties of the third part, provided for the sale of the property by the second party in the event that any of the notes remained unpaid on the first day of May, 1903. In addition to the ordinary provisions of deeds of trust to secure indebtedness, the instrument contained certain recitals and provisions which will be referred to hereafter. The deed of trust was accompanied by a written consent to its execution signed by Ammoretta J. Lanterman and her husband. In May, 1903, no payments having been made on account of either principal or interest since the making of the deed of trust, the trustee gave the required notice of sale to be had on June 2, 1903. Prior to this time, Ammoretta J. Lanterman had died testate, and her husband had been appointed executor of her will. At the time and place fixed, the trustee offered the property for sale. J. L. Lanterman was present, as was Frank D. Lanterman, one of his sons, together with M. W. Conkling, who was the attorney for the executor of Ammoretta's will and also for Frank D. Before calling for bids, the trustee read the published notice of sale, and a "statement of conditions of sale." The notice made no reference to any mortgage or other encumbrance, but the statement of conditions declared, among other things, that a deposit must be made by the successful bidder, and that the balance of the

purchase price would be payable "as soon as the Title Insurance and Trust Company can certify that the title is in the successful purchaser, *free and clear of all encumbrances.*" These papers having been read in the hearing of J. L. Lanterman and M. W. Conkling, neither of whom made any objection or said anything regarding the conditions of sale, J. L. Lanterman, by Mr. Conkling, stated that he would require the proceeds of the sale to be applied: first, upon the two-thousand-eight-hundred-dollar note; second, upon the five-hundred-dollar note; third, upon the one-thousand-dollar note; and lastly, upon the five-thousand-dollar note of June 18, 1895, executed by Ammoretta J. Lanterman alone. Thereupon the property was offered and struck off to Frank D. Lanterman for ten thousand dollars, that being the highest bid. The required deposit was made, and some two weeks later, Albert J. Crisman, as executor, acting under an order of court, executed a release of the mortgage of June 18, 1895. The deed was delivered to the purchaser and the balance of the purchase money paid to the trustee, who applied it to the payment of the four notes in the order in which the application had been demanded. Thereby the three smaller notes were paid, and there remained a sum for application upon the principal and interest of the five-thousand-dollar note sufficient to reduce the unpaid part of such note to $2,274.41. For this amount the executors of Frederick S. Crisman's will presented a claim (as upon a note secured by mortgage) to Ammoretta J. Lanterman's executor. The claim having been rejected, this action, in form one to foreclose a mortgage, was commenced. Separate answers were filed, the defendants relying, in substance, upon the release of the mortgage as a defense. The case was presented to the superior court upon an agreed statement of facts, and judgment went for the defendants. The plaintiffs appeal.

While the complaint is in the familiar form used in actions for the foreclosure of mortgages, the plaintiff's theory really is that there is no mortgage to foreclose, and that they are entitled to a money judgment against Ammoretta's estate, payable in due course of administration. They concede, in effect, that if, at the time of the trustee's sale, the five-thousand-dollar note was secured by a subsisting mortgage on property which had been conveyed by the mortgagor, and if the

mortgagee, without the consent of such mortgagor (or her executor), gave to the owner of the land a valid release of the mortgage, they, as payees of the note, could not hold the mortgagor (or her estate) to a personal liability thereon. And this conclusion is, of course, inevitable under our statutory system of enforcing the payment of obligations secured by mortgage, as construed by this court. While a mortgage creates merely a lien as security for the debt, the code provides that there can be but one action for the recovery of a debt so secured. (Code Civ. Proc. sec. 726.) By the judgment in such action, the land is subjected to a sale for the purpose of satisfying the plaintiff's demand, and, if the proceeds be insufficient a judgment for the balance is then docketed against the defendants personally liable for the debt. Until there shall be a deficiency on such sale, there can be no personal judgment against the mortgagor, who is entitled to have his debt paid out of the land so far as the proceeds realized on foreclosure sale may render payment possible. The land is thus made primarily liable for the payment of the obligation, and the mortgagor can be called on to pay only where the proceeds of a sale of the land are insufficient. He is therefore entitled to insist that the mortgagee shall not, by releasing the land, which should be made to pay the debt, throw upon him a personal liability therefor. (*Bartlett* v. *Cottle*, 63 Cal. 336; *Biddel* v. *Brizzolara*, 64 Cal. 354, 362, [30 Pac. 609] ; *Bull* v. *Coe*, 77 Cal. 54, [11 Am. St. Rep. 235, 18 Pac. 808] ; *Porter* v. *Muller*, 65 Cal. 512, [4 Pac. 531] ; *Barbieri* v. *Ramelli*, 84 Cal. 154, [23 Pac. 1086] ; *McKean* v. *German American Sav. Bank*, 118 Cal. 334, [50 Pac. 656] ; *Woodward* v. *Brown*, 119 Cal. 383, [63 Am. St. Rep. 108, 51 Pac. 2, 542].) Recognizing these well-settled rules, the appellants deny their applicability here by contending, first, that by the execution of the trust-deed the mortgage became merged in the new security with the consent of the mortgagor, so that the debt thereafter was not one secured by mortgage; second, that even if the mortgage survived the making of the trust-deed, the estate of Ammoretta J. Lanterman consented at the trustee's sale to the release of the mortgage given, or (which would amount to the same thing) such estate is by the conduct of the executor at the time of the sale estopped to deny that it consented to the release; and finally, if the court should be against the appellants on

both these points, they urge, third, that the purported release of mortgage was (for reasons which will appear hereafter) void and of no effect, and therefore cannot destroy their right to a judgment, which, under this view, should be one foreclosing the mortgage. If any one of these propositions be sound, it destroys the effect of the contention that Ammoretta, as a mortgagor, is relieved by the release of the land from the lien of the mortgage. And, it may be remarked incidentally that any of these positions, if it be well taken, is equally fatal to the respondents' contention (which appears to have been adopted by the learned judge of the trial court) that, under all the circumstances, Roy became in equity the principal on the mortgage debt sued on, and Amoretta a surety, and that the estate of the latter was exonerated by the release of the mortgage without Roy's consent, and the consequent release of Roy, the principal debtor. For, if there was no mortgage after the deed of trust was given, Roy could not, nor could his surety, be affected by a paper purporting to release it; if the release was with the consent of the surety, it would not relieve such surety from liability; and lastly, if there was no valid release, neither principal nor surety has ground for complaint. It is unnecessary, therefore, to decide the question, which is fully argued in the briefs, as to whether Ammoretta was, as to the Crisman estate, a principal debtor or a surety. Whether she was the one or the other, her estate is liable unless there was a subsisting mortgage which was released as to the owner of the land without her consent or that of her executor.

First. Did the execution of the deed of trust with the consent of Ammoretta, supersede the mortgage? The appellants' contention is that the trust-deed, being given to secure (with other notes) the same obligation secured by the mortgage, and furnishing, as security, the same property described in the mortgage, in favor of the same obligees, it must be assumed that the intention of the parties (including Ammoretta, who consented to the trust-deed) was to substitute a new security—to wit, that of the deed of trust—for the existing security of the mortgage. If that be so, the mortgage was in effect then released by mutual consent, and the subsequent formal release, following the trustee's sale, was a vain and idle act, not affecting the substantial rights of any of the

parties. Whether the execution of the deed of trust accomplished such a merger of the mortgage, or, as it may be termed, a novation of securities, is a question of the intention of the parties, to be derived from their acts. It is not in a legal sense impossible for a mortgage to continue to exist, where there has been given to the mortgagee a further security on the same land for the same debt. It is argued that such situation may produce anomalous results—as, for example, if, by a sale under the junior security, the title to the land should become vested in the holder of the prior mortgage. But this might happen in any case where a deed of trust is given on land subject to an existing mortgage, and, even where the legal title becomes vested in the mortgagee, equity will sometimes, to avoid injustice, treat the mortgage as alive in determining the rights of the parties. The language of the deed of trust here in question would seem to indicate an intention that the mortgage should continue to exist. The instrument first recites that Roy S. Lanterman had borrowed from Frederick Crisman the sums represented by the four promissory notes above mentioned (including the five-thousand-dollar note signed by Ammoretta), that the parties have agreed that all the notes shall be deemed to have matured on May 1, 1903, and that Roy agrees to pay all of the notes, whether executed by him or not, and then grants the lot 9 of the Rancho la Cañada, in consideration of the indebtedness, "and for the purpose of further securing any of said promissory notes which may now be secured by any mortgage," . . . etc. The instrument contains, in addition, the provisions relative to reconveyance or sale which are customary in deeds of this character, and provides that in case of a sale which shall not realize sufficient to pay the entire indebtedness, "the said parties of the third part shall retain, have and possess the same remedies to enforce the payment of said promissory notes, or any of them, which they would have or possess if this deed of trust had not been executed." The clauses quoted certainly indicate that it was not the intention of the parties to have the new security supplant the old. It is described as "further security," which, in the ordinary acceptation of the term, means additional, not substituted, or superior, security, and besides, the executors retain all the remedies they had before, one of which was to foreclose the mortgage on the five-thousand-dollar note. The

argument that the parties would not be likely to intend to contract for two forced sales of the same property to satisfy (in part) the same debt does not seem to us a sufficient ground for disregarding any of the express provisions of their agreement. We think that even if the deed of trust had been made by Ammoretta, the mortgagor herself, it should not be construed as accomplishing a merger of the mortgage. And, when we consider the terms of her consent to the deed, the conclusion that there was no substitution is strengthened. She signed a writing, which provided that "said trust-deed shall not be deemed to in any manner whatsoever affect or waive any rights which the . . . estate of F. S. Crisman, deceased, may now or hereafter have against the undersigned . . . upon or by reason of the said promissory notes or any of them. . . . " This consent was intended to waive any defense which might be claimed to have accrued to Ammoretta on any of her notes by reason of the execution of the deed. But it was not intended to give new and greater rights against her. If the mortgage should be regarded as merged, her liability on her five-thousand-dollar note, which originally was merely "contingent on the fact that a sale of the mortgaged premises shall satisfy the debt and costs" (*Biddel* v. *Brizzolara,* 64 Cal. 354, [30 Pac. 609]) would be converted into a liability, which might be enforced (as it is sought to be enforced here) after the security had been applied to other debts, or, perhaps, without any recourse to the security at all. (See *Herbert Kraft Company* v. *Bryan,* 140 Cal. 73, [73 Pac. 745].)

Second. Did the estate of Ammoretta J. Lanterman consent to the release of the mortgage? The answer to this question depends largely upon the effect that is to be given to the findings of fact made by the trial court. Among them is a finding that the plaintiffs released the mortgage "without the consent of . . . the estate of Ammoretta J. Lanterman." As has been stated, the cause was tried upon an agreed statement of facts, and it is claimed by the appellants that where the facts are agreed, no findings are necessary, and that, if findings are made, they are entitled to no weight. There have been several rulings by this court to the effect that the want of findings affords no ground for reversing a judgment where the facts have been agreed upon. (*Gregory* v. *Gregory,* 102 Cal. 50, [36 Pac. 364]; *Muller* v. *Rowell,* 110 Cal. 318,

[42 Pac. 804].) But here the facts embraced in the stipulation were not the ultimate facts put in issue by the pleadings, but were (as to the question of consent) a recital of the circumstances surrounding the sale, from which the ultimate fact of consent is, as is claimed, inferable. If those circumstances would support an inference either way, it was not only proper but necessary that the trial court should make a finding of the ultimate fact. Such finding when made is entitled to the same weight as any other finding on conflicting evidence, and will not be overthrown unless the facts stipulated cannot by any reasonable inference support the conclusion reached by the trial court. The cases relied on by appellants as establishing the rule that no presumptions will be indulged in favor of the findings where all the evidence before the trial court was written (*Wilson* v. *Cross,* 33 Cal. 60; *Lander* v. *Beers,* 48 Cal. 546) are not in harmony with later decisions. (*Reay* v. *Butler,* 95 Cal. 206, [30 Pac. 208]; *Priest* v. *Brown,* 100 Cal. 626, [35 Pac. 323]; *Sheehan* v. *Osborn,* 138 Cal. 515, [71 Pac. 622].) In the case at bar, the appellants rely upon the conduct of J. L. Lanterman at the trustee's sale as constituting consent by the estate of Ammoretta, or an estoppel to deny consent. One element of such conduct consisted of his failure to object when the trustee read the conditions, showing that the title would be certified to the purchaser free and clear of encumbrances. So far as this silence is concerned, we do not see that it conclusively established an estoppel. No doubt there are cases in which mere silence may work an estoppel. But to effect this it is essential, first, that the party against whom the estoppel is invoked has stood by and seen the other party committing an act infringing upon his rights, and second, that his failure to speak has induced the person committing the act to believe that he assents to its being committed. (*De Bussche* v. *Alt,* 8 L. R. Ch. D. 286; *Carpy* v. *Dowdell,* 115 Cal. 677, [47 Pac. 695].) Here the proposed sale, free of encumbrance, in no way infringed upon the rights of the estate represented by J. L. Lanterman (even if we assume that he attended the sale in his representative capacity). The release of the mortgage by the voluntary act of the mortgagee would not injure the estate, but would benefit it by relieving it of personal liability for the debt. Nor did his non-action in any way mislead the plaintiffs or

induce them to believe that the estate of Ammoretta consented to be held liable on the five-thousand-dollar note without foreclosure of the mortgage. The facts were as well known to plaintiffs as to Lanterman. He had no reason to suppose that they, represented at the sale, as they were, by counsel, were ignorant of the legal effect of their proposed conduct, and was under no duty to warn them that a release of a mortgage without the consent of the mortgagor, relieved such mortgagor from personal liability.

And the request or demand for the application of the proceeds does not raise a necessary inference that J. L. Lanterman, *as executor,* consented to the release of the mortgage, or that his testatrix's estate was estopped to deny consent. The demand was that the proceeds be applied to the payments of the smaller notes before the payment of the five-thousand-dollar mortgage note. The interests of the estate, as mortgagor, required either that the mortgage, which made the estate's liability contingent on a foreclosure sale, should remain, or that, if the mortgage was to be released, the proceeds of the sale should be applied first to the satisfaction of the mortgage debt. Considered by itself, then, the demand that the five-thousand-dollar note be paid last, would imply, not a consent by Ammoretta's estate that the land be sold free from the mortgage, but rather a requirement that the mortgage lien remain for the protection of the estate. Furthermore, J. L. Lanterman did not state that he was acting as executor in attending the sale. As co-maker of one of the notes secured by the mortgage, he had an individual interest in the proceeding. And, in demanding that the proceeds of the sale be applied first to the satisfaction of his own debt, and last to that of the debt which, for the benefit of the estate, should have been paid first, it may well be said that he was acting in his individual, not in his representative capacity. The trial court, by its finding as to consent, took this view, which finds additional support from the fact, stipulated in the record, that J. L. Lanterman would, if present, testify that he was acting for himself, and not for the estate. The fact that his demand included the application of the proceeds of the sale of two notes in which he was not individually interested, is entitled to some weight, but is not sufficient, in itself, to overthrow the finding that the estate did not consent to the release of the mortgage.

Third. Was there a valid release of the mortgage. The instrument executed by the plaintiffs, so far as is material to the present inquiry, reads as follows: "Without in any manner waiving the right of the said executors of the estate of Frederick S. Crisman, deceased, to recover from the said estate of Ammoretta J. Lanterman, deceased, the balance of the principal and interest unpaid upon the said promissory note for $5000,00; but expressly reserving unto said estate of Frederick S. Crisman . . . all the rights now possessed by said estate . . . to recover and receive from the estate of said Ammoretta J. Lanterman, deceased°. . . the unpaid balance of the principal and interest of said promissory note for $5000.00, the undersigned . . . does hereby remise, release, relinquish and discharge from the said mortgage and from the lien thereof all the lands in said deed of trust described," etc.

The contention of plaintiffs is that, if the mortgage lien still existed, it could not be released without releasing Ammoretta's estate, and that, therefore, a reservation of rights against said estate prevented the release from operating at all. We agree that there could not be a release of the lien of the mortgage and a retention of the right to sue the mortgagor (unless she consented), but the conclusion that the release fails does not follow.

Whatever might be the proper construction of the instrument, considered by itself, the circumstances under which it was given estop the plaintiffs, as against the defendant Frank D. Lanterman, to deny that the mortgage was released. The property was sold to him free of encumbrances, and he bid ten thousand dollars upon the understanding that the balance of the purchase price beyond the deposit paid at the sale was to be paid upon a certificate being made by the abstract company that there was no encumbrance. The executors obtained an order of court authorizing them to release this mortgage, and delivered the document in question to the abstract company for the purpose of completing the sale. The abstract company gave the purchaser the certificate agreed upon, and paid the purchase price, previously deposited with it by him, to the trustee, who applied it on the indebtedness secured by the deed of trust. Such application paid in part the five-thousand-dollar note now sued on, and the plaintiffs

CXLIX Cal.—42

recognize such payment in their complaint. They cannot be permitted to retain the purchaser's money, and still claim, as against him, that the mortgage, the release of which was a part of the consideration, still subsists as a lien upon his land. And if the mortgage cannot be enforced as against the owner of the land, it cannot, for the reasons hereinbefore stated, be the foundation of an action against the original mortgagor. The plaintiffs contend that, as executors,. they had no power to release the mortgage except upon full satisfaction of the debt. But a sum was realized sufficient to satisfy the mortgage, and if a full satisfaction was necessary to authorize the release which had been agreed upon, the purchase price should, so far as affects the purchaser's rights, be deemed to have been so applied. The fact that J. L. Lanterman and the trustee agreed upon a different application cannot bind Frank. This not being a voluntary payment, neither the debtor nor the creditor had any right to direct the application of the proceeds. The application is to be made by the court according to the equities of the case. (*Orleans Co. Nat. Bank* v. *Moore,* 112 N. Y. 543, [8 Am. St. Rep. 775, 20 N. E. 357] ; *Blackstone Bank* v. *Hill,* 10 Pick. (Mass.) 129; *Murdock* v. *Clarke,* 88 Cal. 384, [26 Pac. 601].) Without undertaking to review the many decisions, not all in harmony, upon the proper application of funds derived from forced sales, we think it sufficient to say, that under the peculiar circumstances of this case, the equities, as between the estate of F. S. Crisman and Frank D. Lanterman, required the amount paid by the latter to be applied to the satisfaction of the mortgage debt, if such satisfaction was essential to a valid release of the mortgage.

From these views it follows that judgment was properly entered in favor of defendants.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.