[No. 19870.  Department One.  December 10, 1926.]

## E. H. STANTON, *Respondent*, v. EDWARD PITTWOOD et al., *Appellants*.[1]

[1] MORTGAGES (146) — FORECLOSURE — RELEASE — EVIDENCE — SUFFICIENCY.    The evidence sustains findings that the release of a second mortgage, so far as it affected property covered by a first mortgage, did not operate as a merger or release of the second mortgage upon other property not covered by the first mortgage, where it appears there was no consideration for such a release, and all the parties interested in the transaction, except the mortgagor, testified that there was no intention to release the second mortgage or the mortgage debt.

[2] SAME (226)—FORECLOSURE—PERSONAL JUDGMENT FOR DEFICIENCY.  The release of a second mortgage as to the part of the property covered by a first mortgage does not release the right to a deficiency judgment on foreclosing as to the balance, where the release was at the request and for the benefit of the mortgagor.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered June 30, 1925, in favor of the plaintiff, in an action to foreclose a mortgage, tried to the court.  Affirmed.

*O. C. Moore,* for appellants.

*Lund & Dodds,* for respondent.

[1]Reported in 251 Pac. 286.

Bridges, J.—To a certain extent this case is similar to that of *Pittwood v. Spokane Savings & Loan Society, ante,* p. 229, very recently decided by us. However, the cases are sufficiently different to require a short statement of the facts in this case.

The Fireproof Storage Company mortgaged certain real property located in Spokane, which we shall hereafter refer to as the warehouse property, to the Spokane Savings & Loan Society, to secure an indebtedness of $35,000. Thereafter, the storage company deeded the property to the defendants, Pittwood and wife, subject to the mortgage mentioned, but the indebtedness was not assumed by them. They then mortgaged the warehouse property and other real estate, which we shall hereafter speak of as the home property, in Spokane, to the plaintiff Stanton, to secure an indebtedness of nearly $8,000. Stanton's mortgage was a first lien on the home property, but a second lien on the warehouse property. Later, the defendants deeded the warehouse property to the loan society, which gave them a written option to purchase within a designated time at a price equal to the then indebtedness to the loan society and to Mr. Stanton, plus interest and any amount that might be thereafter paid for taxes, etc. At about the same time, Mr. Stanton released his mortgage, in so far as it affected the warehouse property, and the loan society gave him an option to purchase the warehouse property for a sum equal to the then indebtedness from the storage company to it, plus interest and any and all taxes and assessments which might be paid by the loan society. His option was subject to that given appellants.

The plaintiff, by this action, sought to foreclose his mortgage, in so far as the home property was concerned. The defendants objected to any foreclosure,

on the ground that it was agreed that plaintiff's indebtedness should be merged with that of the loan society, and that he would thereafter look exclusively to it for the payment of the defendants' indebtedness to him, and that, because of this agreement, the mortgage on the home property previously given to the plaintiff was, as a matter of law, discharged, and the appellants released from their liability.

The trial court entered a decree foreclosing the mortgage and ordered the home property sold. The defendants have appealed.

[1] A reading of the testimony convinces us that there was no merger of respondent's indebtedness into that of the loan society, and that respondent at no time released the appellants on their indebtedness to him, nor did he in any way release, or intend to release, the mortgage upon the home property.

The argument of the appellants is based, in part, upon the fact that the option which the loan society gave them to purchase the warehouse property included the amount of the indebtedness from them to the respondent. We do not think that the course of the transaction will justify the conclusions reached by appellants in this regard. In the first place, they were personally liable to the respondent. It is not for a moment to be supposed that respondent released them of their obligation or satisfied the mortgage on the home property, unless he got something of value in return. The only thing he got was the inclusion of his indebtedness in the option to purchase, given by the loan society to the appellants. This option did not obligate the latter to purchase, but only gave them the right so to do. If they exercised their option, then they would be required to pay to the loan society the amount of their indebtedness to the respondent, and

the society, having received the money, would have been obligated to pay it to the respondent. But if appellants did not exercise their option, then there was not the slightest chance of the respondent collecting what was owing to him, unless the appellants were personally obligated to pay, or unless the amount could be made out of the mortgage on the home property. It cannot be assumed, merely from the course of the transaction, that the respondent voluntarily put himself in such an insecure position. The testimony of the loan society was to the effect that there was no merger of its indebtedness and that of the respondent, and that it did not in any wise obligate itself to pay appellants' indebtedness to the respondent. Although it would have been much to his interest, if he could have held the loan society for the amount owing to him, respondent fully substantiated the testimony of the loan society to the effect that the latter was in no wise obligated to pay him unless it received the money as the result of the appellants exercising their option to purchase.

If the appellants were relieved of their obligation to respondent, who assumed it? The answer must be that nobody did. Again, if such was the understanding, why was not the mortgage on the home property released? And why did not the appellants demand such release and also the surrender of their note? It seems to us that the only answer to these questions is that there never was any understanding between the parties that appellants were released from their personal obligation, or that the mortgage on the home property was to be considered as released.

The mortgage on the warehouse property was satisfied by the respondent for two reasons. First, because it was necessary for him to release that property from

his mortgage in order that the loan society would take the deed from the appellants; otherwise, his second mortgage would become a first mortgage at the expense of the loan society. The other reason was that respondent knew that his mortgage on the warehouse property was subject to that of the loan society, and that there was but little chance of his ever getting anything out of that property on his second mortgage. To hold with the appellants on these facts would be to accuse Mr. Stanton and the loan society of being exceedingly dull in business transactions, whereas the testimony shows the contrary. Manifestly, the release by the respondent of his second mortgage on the warehouse property was with the knowledge and consent, and probably at the request, and certainly for the benefit, of the appellants.

[2] Appellants further contend that the respondent, having released his mortgage on the warehouse property, thereby released his right to a deficiency judgment against appellants, and that he cannot now be permitted to hold the latter personally for the payment of any part of the indebtedness. This contention is based upon the holding in *Woodward v. Brown,* 119 Cal. 283, 51 Pac. 2, and *Crisman v. Lanterman,* 149 Cal. 647, 87 Pac. 89, both being California cases. Those cases appear to hold that a mortgagee who releases his mortgage to a grantee of the mortgagor, without the latter's consent, cannot hold the mortgagor personally liable for the debt. We do not find it necessary to either accept or reject the doctrine of those cases, for the reason that we hold, in this case, that the respondent released the mortgage on the warehouse property with the knowledge and consent of the appellants and for their benefit. We need not determine here what would have been the result, had not the appellants consented to the release of the second mortgage.

Believing that the judgment of the trial court was right, we affirm it.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., concur.