[Civ. No. 2153.   First Appellate District.—June 29, 1917.]

HERBERT S. SHUEY, Petitioner, v. H. I. MULCREVY, as County Clerk, etc., Respondent.

TRUST DEED — GRANT OF PROPERTY BY RAILROAD COMPANY — SECURITY FOR PAYMENT OF BONDS—MORTGAGE.—A trust deed, whereby a railroad company granted all of its property to a trust company in trust as security for the payment of its bonds and attached interest coupons, is in effect a mortgage.

ID.—LEASE OF RAILROAD PROPERTY—AGREEMENT TO PAY INTEREST ON BONDED INDEBTEDNESS—RIGHT OF BONDHOLDER.—Where one railroad company, in consideration of the lease to it by another railroad company of all of its property, promises to pay the interest on the bonded indebtedness of the lessor and to perform all of the covenants of the deed of trust securing the bond issue, the promise does not constitute an original independent contract based upon an executed beneficial consideration entitling a bondholder seeking to collect interest coupons to sue the lessee and attach its property, but the legal effect thereof is to make the lessee the principal debtor and the lessor the surety, requiring such a bondholder to foreclose the mortgage to collect his interest, and in the event that the mortgaged property be insufficient, resort then may be had against the lessee for the deficiency.

APPLICATION for a Writ of Mandamus originally made to the District Court of Appeal for the First Appellate District to compel a county clerk to issue a writ of attachment.

The facts are stated in the opinion of the court.

Wiliam A. Nunlist, and C. Irving Wright, for Petitioner.

Jesse H. Steinhart, for Respondent.

THE COURT.—In this proceeding an alternative writ of mandate was issued by this court directed to the respondent, commanding him to issue a writ of attachment in a certain action entitled "Herbert S. Shuey, Plaintiff, *versus* Oakland, Antioch & Eastern Railway, a Corporation, Defendant," or to show cause why he has not done so.

In the year 1910 the Oakland & Antioch Railway issued bonds in the amount of two million dollars, and executed and delivered to the Anglo-California Trust Company, as trustee,

a mortgage or deed of trust, whereby it granted to said Trust
Company all of its property, in trust, as security for the pay-
ment of said bonds. This mortgage or deed of trust has not
been foreclosed and is now valid and existing. Thereafter,
on March 18, 1912, the Oakland & Antioch Railway leased to
the Oakland, Antioch & Eastern Railway all of its roadbed
and equipment; the lessee went into possession of the prop-
erty under the lease and has ever since been receiving the
income thereof. The consideration for the lease consisted
of a number of covenants by the lessee, including the follow-
ing: "(c) To pay all fixed charges, including taxes and in-
terest on the bonded indebtedness hereinbefore referred to,
and do, keep and perform each and all of the covenants, terms
and conditions of the mortgage or deed of trust securing the
bond issue hereinbefore referred to, including the payment
of said bonded indebtedness as the same matures and is due
and payable." The petitioner here (plaintiff in the attach-
ment action) is the holder by assignment of a number of
coupons detached from certain of the above-mentioned bonds.
Said coupons being unpaid when due, the petitioner on March
8, 1917, commenced an action against the Oakland, Antioch
& Eastern Railway in the superior court of the city and
county of San Francisco, and applied therein for a writ of
attachment. Respondent refused to issue the writ upon the
theory that under the circumstances above outlined the obli-
gation was secured, and therefore fell within the provisions
of sections 537, 538 of the Code of Civil Procedure, where-
upon this proceeding in mandate was commenced.

The trust deeds referred to in the petition which was given
as security for the payment of the bonds and the interest
coupons attached thereto must be regarded as and is in effect
a mortgage (*McLane* v. *Placerville & S. V. R. R. Co.*, 66 Cal.
606, 612, [6 Pac. 748]; *Banta* v. *Wise*, 135 Cal. 277, 279, [67
Pac. 129]); and it is conceded that in an action by the bond-
holders against the Oakland & Antioch Railway, mortgagor,
the former could not, by virtue of the provisions of the sec-
tions of the Code of Civil Procedure just mentioned, procure
a writ of attachment.

But the petitioner contends that the promise of the Oak-
land, Antioch & Eastern Railway to pay the bonds and in-
terest was an original independent contract based upon an
executed beneficial consideration, which promise is not in any

way secured by said trust deed, and that the duty of the respondent, therefore, was to issue the writ of attachment demanded.

Whether or not this contention is correct depends entirely upon the nature of the contract under review. As before stated, the Oakland, Antioch & Eastern Railway took over the property of the Oakland & Antioch Railway subject to a mortgage, and as part of the same transaction agreed to "pay the interest . . . on the bonded indebtedness . . . and . . . perform all the covenants . . . of the mortgage or deed of trust securing the bond issue." By this clause of the agreement under the rule adopted in this and many other jurisdictions the Oakland, Antioch & Eastern Railway assumed the obligation of the Oakland & Antioch Railway so far as the payment of interest on the bonds was concerned, thereby becoming the principal debtor as between the two railway corporations, and the Oakland & Antioch Railway the surety; and if the mortgagee or a beneficiary under the mortgage·seeks to enforce its right against the Oakland, Antioch & Eastern Railway, the lessee, it must sue to foreclose the mortgage, and should there be a deficiency it may pursue the lessee therefor. This rule is based on the ground that a creditor is entitled to enforce all collateral obligations for the payment of his debt which a person standing in the situation of a surety for others holds for his indemnity. The application of this principle is made possible by the aid of the doctrine of equitable subrogation, under which the lessee, by the assumption of the debt has become, as to the lessor, the principal debtor, the lessor occupying thereafter the position of surety.

In the case of *Pennsylvania Steel Co.* v. *New York City Ry. Co.,* 198 Fed. 721, [117 C. C. A. 503], a lessee railroad in consideration of the lease assumed and agreed to pay the interest on the bonded indebtedness of the lessor railroad. Bondholders sought to collect from the lessee the amount of interest coupons without foreclosing their mortgage. The court held that according to the authorities of the state of New York the mortgaged property was the primary fund for the payment of the indebtedness secured thereby, and that it necessarily followed that the assumption clause, "if constituting a promise for the benefit of the mortgage bondholders, was merely a promise to pay any deficiency after

exhausting the mortgage security''; and, says the court further, ''granting that the promise would be for the benefit of the bondholders, and that it would support a direct action by them, it would not change its constitutional character.'' The lessee would be liable for any deficiency existing after exhausting the security of the mortgage.

The doctrine has found frequent application in cases where the grantee of the mortgagor assumed the mortgage debt. In all such cases in this state it is held that the grantee becomes the principal debtor and the mortgagor becomes the surety; and if the mortgagee seeks to enforce his rights against the grantee, he must sue to foreclose the mortgage.

In *Davis* v. *Davis,* 19 Cal. App. 797, at page 800, [127 Pac. 1051, 1052], the court (quoting *Williams* v. *Naftzger,* 103 Cal. 438, [37 Pac. 411]), said: ''An agreement on the part of a grantee to pay and discharge a mortgage debt upon the granted premises for which his grantor is liable renders the grantee liable therefor to the mortgagee, and in an action for the foreclosure of the mortgage, if the mortgaged premises are insufficient to satisfy the mortgage debt, judgment may be rendered against him as well as against the mortgagor for the amount of such deficiency. This liability results from the familiar doctrine in equity that a creditor is entitled to the benefit of all securities or collateral obligations that his principal debtor may have given to the surety for the payment of the debt. By the conveyance of the mortgaged premises and the assumption of the mortgage debt by his grantee, the latter, as between him and his grantor, becomes primarily liable to the mortgagee, and his vendor becomes his surety.''

In *Roberts* v. *FitzAllen,* 120 Cal. 482, [52 Pac. 818], the defendant ''assumed and agreed to pay the mortgage.'' The court said: ''Appellant claims that his liability accrued April 14, 1890, when he assumed and agreed to pay the mortgage as part of the purchase price of the property; that his obligation was a separate and distinct undertaking disconnected from the original promise of FitzAllen, . . . but such is not the law in this state. The rule is thoroughly well established that where the grantee of the mortgagor assumes the payment of the mortgage as part of the purchase price, he becomes as to the mortgagor the principal debtor and the mortgagor the surety. (*Williams* v. *Naftzger,* 103 Cal. 438, [37 Pac. 411];

*Hopkins* v. *Warner,* 109 Cal. 133, [41 Pac. 868].) The liability of the grantee in such a case is the indebtedness secured to be paid by the mortgage, but which must be enforced by foreclosure, and a deficiency judgment may be entered against him only upon the security—the mortgaged premises—becoming exhausted (Code Civ. Proc., sec. 726; *Biddel* v. *Brizzolara,* 64 Cal. 362, [30 Pac. 609]; *De Costa* v. *Comfort,* 80 Cal. 507, [22 Pac. 218]; *Thomson* v. *Bettens,* 94 Cal. 82, [29 Pac. 336]; *Williams* v. *Naftzger,* 103 Cal. 438, [37 Pac. 411], and cases therein cited; *Tulare County Bank* v. *Madden,* 109 Cal. 314, [41 Pac. 1092]." See, also, *Daniels* v. *Johnson,* 129 Cal. 415, [79 Am. St. Rep. 123, 61 Pac. 1107]; *Tuohy* v. *Woods,* 122 Cal. 665, [55 Pac. 683]; *Page* v. *Chase,* 145 Cal. 578, [79 Pac. 278]; 20 Am. & Eng. Ency. of Law, 993.)

There is a conflict of authority as to the effect of such an assumption clause. In Massachusetts, for example, it has been held that the mortgagee acquires no right whatsoever against the party who assumes the mortgage. This is so held because the common-law doctrine is followed that a person who is not a party to a contract cannot sue thereon. (*Coffin* v. *Adams,* 131 Mass. 133; *Biddel* v. *Brizzolara,* 64 Cal. 362, [30 Pac. 609].) In Colorado, Illinois, Iowa, and a number of other states it has been held that the assumption clause gives a new and independent right to the mortgagee. Under this doctrine the obligation of the Oakland, Antioch & Eastern Railway is not connected in any way with the mortgage, and is unsecured. In Maine, Michigan, New Jersey, North Carolina, North Dakota, Vermont, Virginia, Washington, and in the United States supreme court the doctrine is the same as in California.

As before stated, the principle here involved is most frequently discussed in cases where there has been a grant of an estate in fee; but in so far as the assumption clause is concerned, there can be no difference based on reason between the grant of a leasehold interest and one of an estate in fee.

Writ discharged.

A petition for a rehearing of this cause was denied by the district court of appeal on July 28, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1917.