[Civ. No. 3130.    Third Appellate District.—December 23, 1926.]

T. ASHTON FRY et al., Respondents, v. BALTIMORE HOTEL COMPANY (a Corporation) et al., Defendants; W. J. COLOPY, Appellant.

[1] CORPORATIONS—STOCKHOLDERS' LIABILITY—TIME OF DETERMINATION —TRANSFER OF STOCK — CONSTITUTIONAL LAW. — Under section 3 of article XII of the constitution and section 322 of the Civil Code, a stockholder is individually and severally liable for such proportion of the debts of the corporation during the time he is a stockholder as the par value of his shares bears to the entire subscribed capital stock; and the liability of each stockholder is determined by the amount of stock owned by him at the time the

1.    See 6 Cal. Jur. 998, 1014.

debt is incurred, such liability not being released by any sub-sequent transfer of stock.

[2] ID.—RIGHTS OF CREDITORS—REMEDIES.—A stockholder's liability is created by law and is primary and independent of the liability of the corporation itself, and it is not necessary for a creditor first to bring suit against the corporation and exhaust its assets before he can maintain an action for stockholder's liability.

[3] ID.—ACCEPTANCE BY CREDITOR OF SECURITY FOR DEBT — JUDGMENTS. A creditor's right to proceed against a stockholder individually is not impaired by accepting the corporation's mortgage as security for the debt or by first recovering judgment against the corpora-tion.

[4] ID.—RENEWAL OF OBLIGATION—STOCKHOLDERS' LIABILITY—STATUTE OF LIMITATIONS.—Under section 359 of the Code of Civil Pro-cedure, the statute of limitations runs against a stockholder's liability in three years from the time the obligation or indebted-ness is incurred, and where notes or other written evidence of indebtedness are given, the mere renewal of such obligations will not extend the statute of limitations against the stockholder, but the statute continues to run uninterruptedly from the date of the original indebtedness.

[5] ID.—LEASES—BREACH BY CORPORATION — TIME OF COMMENCEMENT OF STOCKHOLDERS' LIABILITY—STATUTE OF LIMITATIONS.—An ac-tion for the breach of a lease by a corporation, whether it be for damages to the freehold, for failure to pay rent, or for hold-ing over after termination of the tenure, founded upon the original contract, creates a stockholder's liability commencing at the date of the execution of the lease and not from the date of the breach of covenant.

[6] ID.—SUBSTITUTION OF NEW AGREEMENT—CREATION OF NEW OBLI-GATION — STATUTE OF LIMITATIONS. — Where an entirely new, dif-ferent, and distinct agreement, based upon a new and valuable consideration, is subsequently made, even though some of the provisions of the former document are incorporated, or referred to and made a part of the new contract, where the apparent pur-pose of the parties is not to renew or extend the former one, but to completely change certain covenants therein contained, the execution of the latter contract will create a new obligation on the part of both the corporation and the stockholders, from the date of which their liability will run.

---

2.  See 6 Cal. Jur. 995; 7 R. C. L. 373.
3.  See 6 Cal. Jur. 1018.
4.  See 6 Cal. Jur. 1014, 1018; 7 R. C. L. 414.
5.  See 6 Cal. Jur. 1022.

[7] ID.—LEASE OF HOTEL PROPERTY—TERMINATION OF LEASE—SALE OF FURNITURE—NEW CONTRACT—STOCKHOLDERS' LIABILITY. — Where a corporation in anticipation of the termination of its lease of hotel property, which it did not intend to renew, desired to sell its furniture therein at public auction before the expiration of the lease, and for this purpose entered into a new contract with the lessors, by the terms of which, in consideration of the execution of an undertaking by its president and a stockholder to pay any damages resulting from said auction and assuring the payment of rent and the fulfillment of the terms of the lease, the lessors granted the corporation the privilege of using the hotel building as an auction house, for the display of auction signs on the exterior of the building, and the release of a chattel mortgage on the furniture, such contract created a new obligation which bound both the corporation and the stockholders independently of the former liability created by the original lease.

[8] ID. — BREACH OF UNDERTAKING BY CORPORATION—JUDGMENTS—DEFAULT—ACTION AGAINST STOCKHOLDER — EVIDENCE. — In an action againt a stockholder for damages for breach of an undertaking on which he was personally liable, which had been severed from a similar action against the corporation at the stockholder's request, the admission in evidence of a default judgment against the corporation before the expiration of the time for appeal therein constituted reversible error.

[9] JUDGMENTS—DEFAULT—RECITALS—EVIDENCE—APPEAL.—Although a default judgment may be used to prove a former adjudication of rights between parties with the same effect as evidence as if entered upon the trial of an issue formulated upon the pleadings, such judgment is not admissible, under section 1049 of the Code of Civil Procedure, to prove the facts recited therein as evidence before the time for appeal therefrom has expired, even though the sole question which may be presented on appeal from a default judgment is whether the averments of the complaint are sufficient to support the judgment.

[10] ID. — ACTIONS — FINALITY OF JUDGMENT—EVIDENCE.—A judgment is not final so long as the action is still pending, and no judgment, save a final judgment, is competent evidence in another proceeding.

[11] APPEAL—EVIDENCE—SUPPORT OF ISSUES—ELIMINATION OF INCOMPETENT EVIDENCE—SECTION 4½, ARTICLE VI, CONSTITUTION.—Section 4½ of article VI of the constitution will not cure the error of admitting incompetent evidence, when the elimination of such incompetent evidence leaves the record entirely devoid of any evidence to support a material issue in the case.

---

8. See 15 Cal. Jur. 122.
10. See 15 Cal. Jur. 122.

[12] ID.—SUPPORT OF JUDGMENT — MISCARRIAGE OF JUSTICE. — Section 4½ of article VI of the constitution, which provides that no judgment shall be set aside on the ground of the improper admission of evidence unless a miscarriage of justice has resulted, does not apply where there is an entire absence of material evidence as to a necessary element of the cause of action after eliminating the part improperly admitted, but such provision applies only where the elimination of the evidence erroneously admitted still leaves substantial evidence upon which to support the judgment.

(1) 14 C. J., p. 979, n. 78, 85 New, p. 1017, n. 10. (2) 14 C. J., p. 972, n. 93, p. 973, n. 9, p. 979, n. 80, p. 1049, n. 58. (3) 14 C. J., p. 1040, n. 70, p. 1042, n. 89 New. (4) 14 C. J., p. 1104, n. 2, 9. (5) 14 C. J., p. 1032, n. 45, p. 1104, n. 2. (6) 14 C. J., p. 1104, n. 12 New. (7) 14 C. J., p. 1104, n. 12 New. (8) 14 C. J., p. 1129, n. 47 New. (9) 34 C. J., p. 891, n. 96, p. 898, n. 57. (10) 34 C. J., p. 898, n. 57. (11) 4 C. J., p. 1002, n. 34, p. 1173, n. 69 New. (12) 4 C. J., p. 1173, n. 69 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Daniel C. Deasy, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Robert E. Austin and John N. Helmick for Appellant.

Harry W. Hanson, Meserve & Meserve and Timon E. Owens for Respondents.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal by the defendant Colopy from a judgment for damages based upon a stockholder's liability for the debts of a corporation for breach of contract.

Two reasons are assigned by the defendant upon which he relies for a reversal of the judgment. First, that the agreement upon which the judgment is founded was a mere renewal of a former lease, for the breach of which a stockholder's liability was barred by the limitations prescribed in section 359 of the Code of Civil Procedure. Second, that a former judgment against the corporation, which furnished the only evidence of the amount or character of the damages, was not a final judgment from which the time for appeal had expired, and that the judgment was therefore not competent as evidence of indebtedness of the corporation.

Plaintiffs were the owners of hotel property in Los Angeles. May 26, 1911, they executed a ten-year lease of this property to the Baltimore Hotel Company, a corporation, in consideration of $326,000, payable in equal monthly installments. Defendant was then a stockholder in the hotel corporation. This lease provided for the execution of a chattel mortgage on the hotel furniture to be held by plaintiffs to secure the payment of rent, and the performance of the covenants of the lease. This mortgage was duly executed and held by plaintiffs until the modification of the lease by a subsequent agreement between the parties, dated December 14, 1921, which forms the basis for the indebtedness for which the judgment in this case was rendered. The original lease expired December 31, 1921. The Baltimore Hotel Company did not intend to renew their lease. In anticipation of the termination of this lease plaintiffs had executed a twenty-five year lease of the hotel property to J. E. Seamore for $40,000 per year, agreeing to deliver possession of the property to him on January 1, 1922. Defendant Colopy and the Baltimore Hotel Company were anxious to dispose of their hotel furniture before the expiration of the lease and desired to hold a public auction of the furniture in the hotel building. Before the furniture could be sold it was necessary for plaintiffs to release their chattel mortgage. For this purpose plaintiffs and the hotel company executed a written agreement, dated December 14, 1921, which did not purport to renew the original lease, nor extend the term of its expiration. By the terms of this new agreement plaintiffs consented to the use of the hotel building for the purpose of conducting said public auction, providing in detail for the manner of carrying on the sale and for displaying certain signs advertising the auction; that the hotel company should remove all dirt and rubbish occasioned thereby and repair all damage resulting from the sale, and agreeing to cancel the chattel mortgage, upon condition that, in lieu of said mortgage security this defendant Colopy and Ernest H. Hess, the president of the hotel corporation, should execute and deliver to plaintiffs a good and sufficient undertaking in the sum of $5,000 to secure plaintiffs against any damages resulting from said auction sale and assuring the payment of rent and the fulfillment of the terms of the lease. This undertaking was duly executed and delivered, and

plaintiffs thereupon canceled the chattel mortgage and
thereby forfeited their mortgage security. The language of
this contract of December 14, 1921, in this respect was as
follows: "First parties agree, upon the execution of this
contract, and attached undertaking, to release of record the
lien of a certain chattel mortgage existing in their favor
as security for the performance of the covenants of the lease
aforesaid, and which said chattel mortgage is a lien upon the
furniture, furnishings and equipment of said hotel . . . *as
soon as said party shall have complied with the terms of this
agreement, and the said indenture of lease,* and shall have
repaired or paid first parties for all damage, if any, done
to the demised premises during the occupancy thereof by
said second party, then and in that case this written under-
taking in the amount of $5000, shall be canceled."

The language of the accompanying undertaking was as
follows:

"In consideration of the execution of the foregoing agree-
ment, the undersigned do hereby jointly and severally under-
take and bind ourselves, . . . up to, but not exceeding the
amount of $5000, to save and hold first parties named in
the above agreement free and harmless from any and all
damages arising from the sale and removal from the said
Baltimore Hotel, of the furniture, furnishings and fixtures
therein belonging to said second party in said agreement.

"This undertaking shall remain in full force and virtue,
until all such damages shall have been repaired, or until first
parties named in said agreement shall have been paid the
amount of such damage, and thereupon this undertaking
shall become void and of no effect.

"Dated at Los Angeles, December 14th, 1921.

"(Signed.)     ERNEST H. HESS,—     W. J. COLOPY."

Pursuant to this agreement the auction sale of furniture
was held. The hotel company failed to deliver possession of
the property until eighteen days after the expiration of the
lease, to wit, January 18, 1922. Suit was thereupon brought
by plaintiffs against the Baltimore Hotel Company and the
stockholders for damages for breach of covenants of the
original lease and for breach of the terms of this subsequent
agreement of December 14, 1921, the chief items of which
claim for damages included the loss of $1,888 rent and

$5,000 alleged damages for holding possession of the premises beyond the specified term of the lease.

This case came on regularly for trial on May 14, 1924. On motion of defendant Colopy the case was severed as to him and his case was set for trial in the afternoon of that same day. The cause was then ordered to proceed against the remaining defendants. The attorneys appearing in behalf of the corporation then announced that "they had no defense to offer, and that the cause might be considered as going by default against the Baltimore Hotel Company." Whereupon these attorneys abandoned the case and left the courtroom. The trial, however, proceeded and upon evidence adduced the court rendered judgment against the corporation for damages in the sum of $7,025, which judgment was immediately entered and docketed.

At 2 o'clock in the afternoon of the same day the cause came on for trial against the defendant Colopy. The judgment against the hotel company, which had been procured in the forenoon, was offered and received in evidence over the objection of defendant Colopy. This was the only evidence adduced against him, to prove the actual damages sustained for breach of the lease, or for violation of the terms of the subsequent agreement of December 14, 1921. Most of the evidence at this trial was directed toward the question as to the liability of the defendant Colopy, as a stockholder, he claiming that the action upon the original obligation incurred by the execution of the lease was barred by the provisions of section 359 of the Code of Civil Procedure, and that he had disposed of his stock before the execution of the new contract of December 14, 1921. The court, however, found against him and held that a valid judgment for damages existed against the corporation, and that defendant Colopy was liable as a stockholder to the extent of $3,512.95, and rendered judgment accordingly. From this judgment the defendant has appealed.

[1] A stockholder is individually and severally liable for such proportion of the debts of the corporation during the time he is a stockholder as the par value of his shares bears to the entire subscribed capital stock. (Cal. Const., art. XII, sec. 3; Civ. Code, sec. 322.) The liability of each stockholder is determined by the amount of stock owned by him at the time the debt was incurred. (*Finch* v. *Finch,* 68 Cal.

App. 72 [228 Pac. 553]; *Hunt* v. *Ward,* 99 Cal. 612 [37 Am.
St. Rep. 87, 34 Pac. 335].)    And such liability is not released
by any subsequent transfer of stock.    (Civ. Code, sec. 322.)
[2] A stockholder's liability is created by law and is pri-
mary and independent of the liability of the corporation
itself. (*Chambers* v. *Farnham,* 182 Cal. 191 [187 Pac.
423].) Since the obligation constitutes a primary liability
against the stockholder it is not necessary for a creditor to
first bring suit against the corporation and exhaust its assets
before he can maintain an action for stockholder's liability.
(6 Fletcher's Enc. of Corp. 7245, sec. 4180; *Eva* v. *Ander-
son,* 166 Cal. 420 [137 Pac. 16].) [3] Neither accepting
the corporation's mortgage as security for the debt nor first
recovering a judgment against the corporation will impair
the creditor's right to proceed against the stockholder in-
dividually. (6 Fletcher, *supra,* 7240 and 7246, sec. 4180;
*Sonoma Valley Bank* v. *Hill,* 59 Cal. 107; *Knowles* v. *Sander-
cock,* 107 Cal. 629 [40 Pac. 1047].) [4] The statute of
limitations runs against a stockholder's liability in three years
from the time the obligation or indebtedness is incurred.
(Code Civ. Proc., sec. 359; *Chambers* v. *Farnham, supra.*)
Where notes or other written evidence of indebtedness are
given, the mere renewal of such an obligation of a corpora-
tion will not extend the statute of limitations against the
stockholder, but in spite of such renewal of the evidence of
debt, the statute continues to run uninterruptedly from the
date of the original indebtedness.    (7 R. C. L. 414, sec. 401;
*London & S. F. Bank* v. *Parrott,* 125 Cal. 472 [73 Am. St.
Rep. 64, 58 Pac. 164]; *Goodall* v. *Jack,* 127 Cal. 258 [59
Pac. 575]; *Santa Rosa National Bank* v. *Barnett,* 125 Cal.
407 [58 Pac. 85].)

[5] Undoubtedly an action for the breach of a lease,
whether it be for damages to the freehold, for failure to pay
rent, or for holding over after the termination of the tenure,
founded upon the original contract, creates a stockholder's
liability, commencing at the date of the execution of the
lease and not from the date of the breach of covenant.

In the case of *Chambers* v. *Farnham, supra,* suit was
brought against the stockholders of Belmore Land and Water
Company, a corporation, for damages for breach of the cove-
nant of a lease to construct irrigation ditches and build
headgates at certain specified points along the way.    The

breach complained of was the failure to place the headgates at the designated places. It was there contended that the obligation did not accrue until the breach occurred, which was more than three years after the execution of the lease. Mr. Chief Justice Angellotti in that case said: "The question remaining here is whether such liability on the part of the corporation is incurred at the time of the execution of the contract or at the time of the breach, or possibly at the time the damage is suffered. In the light of the views announced in the leading case of *Hunt* v. *Ward*, 99 Cal. 612 [37 Am. St. Rep. 87, 34 Pac. 335], and a long line of cases following and approving the doctrine there announced, culminating in the comparatively recent case of *Coulter Dry Goods Co.* v. *Wentworth*, 171 Cal. 500 [153 Pac. 939], where the cases were reviewed and the matter exhaustively considered, we deem this question no longer open to discussion. The liability of the corporation to respond in damages for any failure to perform the covenants contained in its contract was necessarily created or incurred by the execution of the contract, notwithstanding that no right of action could accrue until a breach occurred." Quoting approvingly from this same case of *Hunt* v. *Ward*, the learned chief justice further says: "Of course there is a clear and wide distinction between the creation of a liability and the accruing of a cause of action thereon; and section 359, *ex industria*, emphasizes that distinction. A liability may be absolute or contingent; it may be unconditional or limited; it may be presently enforceable by action, or there may be time given for its performance; but whatever its character, it is created by the consummation of the contract, act or omission by which the liability is incurred."

[6] However, where an entirely new, different, and distinct agreement is subsequently made, based upon a new and valuable consideration, even though some of the provisions of the former document are incorporated, or referred to and made a part of the new contract, where it is apparent that the purpose of the parties was not to renew or extend the former one, but rather to completely change and alter certain covenants therein contained, it is apparent that the execution of the latter document will create a new obligation on the part of both the corporation and the stockholders, from the date of which their liability will begin to run.

[7]   In the instant case the agreement of December 14, 1921, which forms the basis of the judgment in this case, did not purport to renew or extend the covenants of the lease which was executed in 1911.   The date of the termination of the lease was not changed.   An entirely new and distinct contract was therefore made, by the terms of which added benefits were granted to the corporation and its stockholders, to wit: the privilege of using the hotel building as an auction house; the displaying of auction signs on the exterior of the building and the release of a chattel mortgage on the furniture, which was held by the plaintiffs to secure the performance of the covenants of the lease.   By the terms of this new contract all these benefits accrued to the corporation and its stockholders in consideration of the execution of the $5,000 undertaking.   There was ample consideration for this agreement and it created a new obligation which bound both the corporation and the stockholders independently of the former liability created by the original lease.   (*Concannon* v. *Smith*, 134 Cal. 14 [66 Pac. 40]; *Union Oil Co.* v. *Purissima Hills Oil Co.*, 181 Cal. 479 [185 Pac. 381]; *Searles* v. *Gonzalez*, 191 Cal. 426 [28 A. L. R. 78, 216 Pac. 1003].)

[8]   But, regardless of whether the execution of the agreement of December 14, 1921, together with the accompanying undertaking, created a personal liability, or a new stockholder's liability against the defendant Colopy, there was absolutely no evidence of the character or amount of damages which accrued by virtue of the breach of contract, except the judgment which had been procured against the corporation in the forenoon.   That judgment was not final so as to constitute competent evidence to be adduced in another proceeding.   The time for appeal had not expired. In contemplation of law, that proceeding was still pending. Section 1049 of the Code of Civil Procedure provides: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."   It has been definitely determined by our courts that "A judgment, in order to be admissible in evidence for the purpose of proving facts therein recited, must be a final judgment in the cause, and if the action in which the judgment is rendered is still pending, necessarily a judg-

ment is not final.'' (*Chambers* v. *Farnham,* 39 Cal. App. 17 [179 Pac. 423]; *In re Blythe,* 99 Cal. 472 [34 Pac. 108]; *Naftzger* v. *Gregg,* 99 Cal. 83 [37 Am. St. Rep. 23, 33 Pac. 757]; 7 Ency. of Evidence, 814; *Cook* v. *Ceas,* 143 Cal. 221 [77 Pac. 65]; *Story* v. *Story,* 100 Cal. 41 [34 Pac. 675]; *Murray* v. *Green,* 64 Cal. 363 [28 Pac. 118]; *Woodbury* v. *Bowman,* 13 Cal. 634; Jones on Evidence, 932, sec. 596.)

[9] Nor is the rule different with respect to the admissibility of a judgment by default to serve as evidence in another proceeding. In 7 Encyclopedia of Evidence, 795, it is said: ''A judgment by default has the same effect upon the rights of the parties as one rendered upon a joinder of issues between them, and therefore it may be used as a former adjudication with the same effect as evidence as if it had been entered upon trial of an issue formulated upon the pleadings.'' Except that upon appeal it has been held that the sole question which may be presented is whether the averments of the complaint are sufficient to support the judgment. (*San Gabriel Valley Bank* v. *Lake View Town Co.,* 4 Cal. App. 630 [89 Pac. 360].) It necessarily follows that so long as there is an appeal from a default judgment on any ground whatsoever, the action is considered as ''still pending,'' until the time for appeal has elapsed. [10] According to the authorities heretofore cited, a judgment is not final so long as the action is still pending and no judgment, save a final judgment, is competent evidence in another proceeding.

[11] It cannot be said that article VI, section 4½, of the constitution will cure the error of admitting incompetent evidence, when the elimination of that incompetent evidence leaves the record entirely devoid of any evidence to support a material issue in the case. In the case of *J. I. Case Threshing Machine Co.* v. *Copren Bros.,* 32 Cal. App. 194 [162 Pac. 647], Mr. Justice Chipman said, with relation to the application of this section of the constitution to a complaint which lacked material allegations, and where material proof of essential facts was also lacking, ''We think it would be giving to section 4½ of article VI unwarranted scope to permit its application to such a state of facts as we have here. To do so we must, in effect, say that it is not necessary to state facts sufficient to constitute a cause of action, or having stated a cause of action that it need not be sup-

ported by sufficient evidence. The section was not intended to abrogate or dispense with rules of procedure and evidence. It would in our opinion effect a miscarriage of justice to sustain the rulings of the trial court upon the record before us." (*People* v. *Schiaffino*, 73 Cal. App. 357 [238 Pac. 725].)

[12] The language of the constitution to the effect that "No judgment shall be set aside, . . . in any case, on the ground, . . . of the improper admission of evidence . . . unless, after an examination of the entire case, including the evidence, the court should be of the opinion that the error complained of has resulted in a miscarriage of justice," certainly cannot be construed to mean that a judgment may be affirmed when there is an entire absence of material evidence as to a necessary element of the cause of action. This construction would be converting the constitution into an engine for the perpetration of a miscarriage of justice. We are of the opinion that the constitutional provision should be construed to mean that an error of the trial court in the introduction of evidence may be disregarded to prevent a miscarriage of justice, provided the elimination of the evidence thus erroneously admitted still leaves substantial evidence upon which to support the judgment.

The judgment is therefore reversed and the trial court is directed to try and determine the issue only as to the amount of the liability of the defendant Hotel Company under the contract dated December 14, 1921, and the proportion thereof for which the defendant Colopy is liable pursuant to article XII, section 3, of the constitution, and section 322 of the Civil Code, and enter judgment accordingly.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 22, 1927, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1927.