[Civ. No. 1533.   Fourth Appellate District.—January 21, 1935.]

OTTO BIRKHOFER et al., Appellants, v. THEODORE KRUMM, Respondent.

44

U. F. Lewis and Glensor, Clewe, Schofield & Van Dine for Appellants.

Theodore G. Krumm for Respondent.

MARKS, J.—This is an appeal from an order discharging an attachment and the attached property from the attachment lien.

The facts of the case are not in dispute and may be summarized as follows:

On March 27, 1928, W. E. Grigsby and Florence Gill Grigsby executed their promissory note in the sum of $48,000 to Y. J. Attwood, one of the appellants here. The note was payable in annual installments of $5,000 for a period of eight years, and of $8,000 thereafter. It carried interest at the rate of seven per cent per annum, payable semi-annually. The note contained the usual acceleration clause.

On April 14, 1928, Mr. and Mrs. Grigsby conveyed the real property described in the deed of trust to respondent, Theodore Krumm, who has ever since been the owner of the property. The deed to Krumm recited that it was "Subject to a deed of trust of $48,000.00 now of record which the grantee hereby assumes and agrees to pay."

On July 8, 1929, Attwood assigned all his right, title and interest in the note and deed of trust to appellant Leland S. Murphy to secure the payment of his note to Murphy

upon which there remains an unpaid balance of about $40,000.

On June 9, 1933, Murphy assigned the note and deed of trust to appellants Otto and Laura Birkhofer to secure the payment of his note to them, on which there remains unpaid about $40,000.

Prior to January 23, 1933, Murphy assigned the note and deed of trust to the Sebastopol National Bank to secure his note to the bank. This note was subsequently paid.

Prior to January 23, 1933, interest on the note up to September 27, 1932, had been paid, but default had been made in the payment of $2,500 on the $5,000 principal falling due on March 27, 1932.

On January 23, 1933, Krumm requested of Attwood, Murphy and the bank an extension of time within which to make payments of installments due, and to become due, and the following agreement was executed:

### "EXTENSION AGREEMENT

"The undersigned desires and hereby requests that the time for payment of the principal of $2500.00 due on March 27, 1932, on that certain note in favor of Y. J. Attwood for $48,000.00, subsequently assigned to Leland S. Murphy and subsequently assigned to the Sebastopol National Bank, Sebastopol, California, which note bears date of March 27, 1928, and upon which there remains an unpaid principal balance of $30,500.00, the same being secured by a Deed of Trust recorded May 11, 1928, in Book 367, page 155, Official Records, San Bernardino County, California, be extended to March 27, 1934, and that $3000.00 which will become due on the same note March 27, 1933, be extended to March 27, 1934, and in consideration of such extension the undersigned guarantees the payment of the note or any renewal or extension thereof according to these amended terms and all expenses of collection thereof and waive demand, presentment for payment, protest and notice of protest and consent that the time for payment may be further extended without notice to me, and agrees to pay the balance of the principal sum owing on said note and the interest thereon from Sept. 27, 1932, at the rate of 7% per annum, payable semi-annually on March 27th and September 27th of each and every year, subject to all other conditions and covenants in said note and deed of trust

expressed except that any privilege· heretofore granted for the payment of the above note prior to maturity is hereby waived. This Extension Agreement is made upon the representation and is effective only upon the condition that the premises covered by said deed of trust are subject to no other lien or subsequent encumbrance except taxes for the present fiscal year and no one other than the undersigned has any interest therein except as herein noted.

"Dated at Sebastopol, California, this 23rd day of January, 1933.

"THEODORE KRUMM.

"Accepted:

"January 23, 1933.

"Y. J. Attwood, Leland S. Murphy

"Sebastopol National Bank

"P. J. B. Fuller

"Vice-Pres. & Cashier."

Krumm paid the interest which fell due on March 27, 1933, but did not make the payment of the $2,500 and $3,000 installments of the principal which had been extended to March 27, 1934, nor the installment of $5,000 which became due on that date.

This action was commenced on April 26, 1934, to secure judgment against Krumm for $30,500 unpaid on the principal of the note secured by the deed of trust, accrued interest and attorney's fees. An attachment was issued and levied on Krumm's property. The second amended affidavit for attachment recited that the guaranty by Krumm of the debt "had not been secured by any mortgage, deed of trust or lien upon real or personal property, or any pledge of personal property".

Krumm moved to discharge the attachment on the ground that it was secured by a deed of trust on real property and that the security had not been exhausted or become valueless. On the hearing of the motion the foregoing facts were developed, with the additional fact that on January 31, 1934, the Birkhofers had recorded a notice of default and election to sell the property under the terms of the deed of trust.

The motion to discharge the attachment was granted upon the ground that the debt sued upon was secured by a deed

of trust on real property in San Bernardino County, California, and that the security had not become valueless.

It is the theory of the plaintiffs that the quoted instrument which Krumm executed on January 23, 1933, was a guaranty of the Grigsby's indebtedness which constituted a contract independent of the secured debt and that it was not necessary to exhaust the security before instituting this action against Krumm. ■ The following cases support the rule that where a third party, for a valuable consideration, guarantees the debt of another which is secured by a mortgage or deed of trust an action may be brought against the guarantor without exhausting the security for the debt which he guaranteed, as the guaranty constitutes an obligation independent of the secured debt: *San Francisco Theological Seminary* v. *Monterey County Gas Co.*, 179 Cal. 166 [175 Pac. 693], *Knowles* v. *Sandercock*, 107 Cal. 629 [40 Pac. 1047], *Carver* v. *Steele*, 116 Cal. 116 [47 Pac. 1007, 58 Am. St. Rep. 156], *Adams* v. *Wallace*, 119 Cal. 67 [51 Pac. 14], *Kinsel* v. *Ballou*, 151 Cal. 754 [91 Pac. 620], *Martin* v. *Becker*, 169 Cal. 301 [146 Pac. 665, Ann. Cas. 1916D, 171], *Murphy* v. *Hellman etc. Bank*, 43 Cal. App. 579 [185 Pac. 485], and *Fry* v. *Baltimore Hotel Co.*, 80 Cal. App. 415 [252 Pac. 752].

The single question presented on this appeal is whether the debt sued upon is secured. In arriving at our answer it is necessary for us to consider, (1) the obligation assumed by Krumm when he accepted the deed to the real property in which was incorporated the clause, "Subject to a Trust Deed of $48,000.00 now of record which the grantee hereby assumes and agrees to pay," and (2) the nature of the obligation created by the "Extension Agreement" which we have quoted.

The determination of the answers to both of these questions becomes necessary because respondent urges that upon accepting the deed containing the provision wherein he assumed and agreed to pay the secured indebtedness upon the real property he became the principal debtor and could neither become the guarantor nor surety for himself nor indemnify others against loss where he himself was the principal.

For the purpose of this decision there is no difference between a mortgage and a deed of trust in determining the

rights of the parties. Hereafter we will refer to the maker of a note and signer of a deed of trust as a mortgagor, his grantee as the grantee of the mortgagor, and the mortgagee or the beneficiary under a deed of trust as the mortgagee. We will also refer to mortgages and deeds of trust as mortgages.

The decisions of this state are not entirely uniform in defining the status of the grantee of a mortgagor where the deed contains the proviso that the grantee assumes and agrees to pay the encumbrance on the property.

Some cases hold that the property is primarily chargeable with the mortgage debt and furnishes a primary fund for its payment (*Crisman* v. *Lanterman,* 149 Cal. 647 [87 Pac. 89, 117 Am. St. Rep. 167]; *Curtis* v. *Holee,* 184 Cal. 726 [195 Pac. 395, 18 A. L. R. 1024]); that on foreclosure the land becomes the principal debtor and the mortgagor the surety (*Braun* v. *Crew,* 183 Cal. 728 [192 Pac. 531]); that it is against the contingency of a deficiency arising after the sale of the property that the grantee who assumes and agrees to pay must protect the mortgagor and mortgagee. (*Biddel* v. *Brizzolara,* 64 Cal. 354 [30 Pac. 609]; *Robson* v. *O'Toole,* 45 Cal. App. 63 [187 Pac. 110].)

Numerous cases hold that such grantee of the mortgagor becomes the principal debtor and the mortgagor his surety as between the two. The right to collect the deficiency from the grantee is given to the mortgagee under the rule of equity that a creditor is entitled to the benefit of all securities that his principal debtor may have given to his surety for the payment of the debt under the equitable doctrine of subrogation. (*Williams* v. *Naftzger,* 103 Cal. 438 [37 Pac. 411]; *Davis* v. *Davis,* 19 Cal. App. 797 [127 Pac. 1051]; *Shuey* v. *Mulcrevy,* 34 Cal. App. 218 [166 Pac. 1019].)

Still other cases hold that such grantee of the mortgagor becomes the principal debtor to both the mortgagor and the mortgagee. The rule is thus stated in *Brichetto* v. *Raney,* 76 Cal. App. 232, at page 247 [245 Pac. 235] : ''There is a broad and obvious distinction, in the effect thereof upon the rights of the parties, between the taking of mortgaged property subject to a mortgage subsisting thereon at the time of such taking and the assumption or agreement by the grantee to pay the debt secured by such mortgage, in that, where the purchaser or grantee of the mortgaged prop-

erty takes it *subject* to the mortgage only, there being no express or implied agreement to assume the mortgage debt, he is bound only to the extent of the property, but if the debt be assumed by the grantee, he becomes the principal debtor, while the mortgagor, as is the theory of the findings in this case, becomes the surety. (Jones on Mortgages, 7th ed., sec. 751; *Roberts* v. *Fitzallen,* 120 Cal. 482 [52 Pac. 818].)'' (See, also, *Robson* v. *O'Toole, supra; Tompkins* v. *Powers,* 106 Cal. App. 464 [289 Pac. 685] ; *Essey* v. *Phillips,* 136 Cal. App. 3 [28 Pac. (2d) 38].)

In the case of *Bogart* v. *George K. Porter Co.,* 193 Cal. 197 [223 Pac. 959, 31 A. L. R. 1045], the Supreme Court considered these various rules and reached the conclusion that it made little difference in that case which one was regarded as correct as they all lead to the same result, namely, the recovery of any deficiency against the grantee.

Strictly speaking it is difficult to see just how the grantee of the mortgagor can be regarded as the principal debtor of the mortgagee. There is no privity of contract between them. The grantee can relieve himself of all liability for a deficiency by reconveying to his grantor before foreclosure proceedings are instituted. In the old case of *Biddel* v. *Brizzolara, supra,* this rule was announced as follows: ''The mortgagee being the representative, and standing in the place of the mortgagor, to enforce the rights of the latter against the purchaser, *and having no greater or other equity in himself,* is entitled only to such remedy as the mortgagor himself had when the bill was filed. 'In other words, being a stranger to the contract of the purchaser with the mortgagor, and to the consideration whereon it was founded, it will be competent for those who were parties to it to rescind and extinguish it at their pleasure; and after such rescission and extinguishment, the contract becomes utterly incapable of enforcement.' (*Crowell* v. *Hospital of St. Barnabas,* 27 N. J. Eq. 650.)'' (See *Williams* v. *Naftzger, supra.*) The grantee may also change his status by granting the property to another who assumes and agrees to pay the indebtedness. (*Robson* v. *O'Toole, supra; Essey* v. *Phillips, supra.*) These acts may be done without the consent of the mortgagee if no foreclosure proceedings have been instituted. If the grantee became the principal debtor of the mortgagee upon his acquiring the property and agreeing to assume and pay

the mortgage, and this without the consent of the mortgagee, it is difficult to see how this relation could be changed by the act of the debtor without the consent of the creditor.

The more logical rule is formed by a consolidation of the first and second theories we have been considering. ■ By so doing we arrive at the following: That the land furnishes the principal or primary fund for the payment of the mortgage debt; that as between the grantor and grantee, the grantee becomes the principal and the grantor the surety for the deficiency remaining after applying the money derived from the sale of the land on the debt; that from the point of view of the mortgagee both the grantor and the grantee stand in the relation of sureties for the payment of the deficiency to the mortgagee. ■ A surety may require his creditor to exhaust the principal fund to lighten the surety's burden before proceeding against the surety personally. (Sec. 2845, Civ. Code; *Murphy* v. *Hellman etc. Bank,* 43 Cal. App. 579 [185 Pac. 485].) This reasoning brings us to a point where the rules we have announced governing the relations of the mortgagor, his grantee and the mortgagee are in strict harmony with the provisions of section 726 of the Code of Civil Procedure and the multitude of decisions which hold that the mortgagee must exhaust the security before he can recover against his debtor and that this recovery must be limited to the deficiency remaining after applying the funds derived from the sale of the property on the debt.

■ We must next pass to a consideration of the legal effect of the document of January 23, 1933, signed by Krumm. Plaintiffs urge that it is an independent contract for the payment of the debt distinct and separable from the mortgage indebtedness. They also cite authorities which can only be controlling if the instrument be a guaranty, and they argue that it is such.

Section 2787 of the Civil Code provides that "A guaranty is a promise to answer for the debt, default, or miscarriage of another person." A reading of the instrument is sufficient to demonstrate that it does not come within this definition. It contains no promise to answer for the debt, default or miscarriage of the mortgagor or any other person. Lacking this important element it cannot be a guaranty. ■ Another important reason exists why the in-

strument cannot be regarded as a guaranty. It materially changed the terms of the promissory note signed by Mr. and Mrs. Grigsby without their knowledge or consent as far as the present record discloses. This had the effect of releasing them from liability for any deficiency judgment. (*Braun* v. *Crew, supra,* and cases cited.) There can be no guaranty without any debt, default or miscarriage *of another* to answer for. It follows that the cases which hold that an action independent of foreclosure proceedings may be instituted on the guaranty of a mortgage debt are not applicable here.

■ The promise of Krumm in the agreement under consideration may be paraphrased as follows: In consideration of the extensions of time requested by me I guarantee and promise that I will pay the principal and interest on the note as therein provided and as herein extended, this being subject to all the terms and conditions of such note and the deed of trust securing it except that I waive the option of paying the note prior to maturity. It is obvious that this agreement is supported by sufficient consideration. It is also equally obvious that its terms are not sufficiently clear and definite to constitute a complete contract without reference to the note and deed of trust. The reference to these instruments virtually make them a part of the extension agreement which cannot be intelligently interpreted without reference to both of them. The note and deed of trust contain the following paragraph: "If due (to) climatic conditions defined as excessive heat, wind or excessive cold, crop shall be less than 3,000 field boxes, the principal payment due for that particular year is to be automatically extended for a period of one year." We take it that should the crop have been reduced to less than 3,000 boxes by any of the causes specified no one would have the temerity to suggest that under the terms of the extension agreement the principal payment falling due that year would not be extended. This agreement became a part of and entirely dependent upon the note and deed of trust. It can neither be construed nor enforced as an independent agreement separate from the note and deed of trust.

A very similar situation is presented in the case of *Shuey* v. *Mulcrevy, supra.* The Oakland & Antioch Railway issued its coupon bonds secured by a mortgage or deed of trust

on its properties. It subsequently leased its properties to the Oakland, Antioch & Eastern Railway. As one of its considerations the lease provided that the lessee would pay " 'interest on the bonded indebtedness hereinbefore referred to, and do, keep and perform each and all the covenants, terms and conditions of the mortgage or deed of trust securing the bond issue hereinbefore referred to, including the payment of said bonded indebtedness as the same matures and is due and payable' ". The petitioner became the holder of some of the past due interest coupons and commenced action in the superior court against the lessee to collect their value and applied to the county clerk for a writ of attachment against the property of the lessee. His request was refused and he applied to the District Court of Appeal for a writ of mandate to compel the county clerk to issue the writ of attachment. In that case, as here, the contention was made that the new promise of the lessee "was an original independent contract based upon an executed beneficial consideration, which promise is not in any way secured by said trust deed". The court refused the writ and disposed of this contention on the following grounds: "Whether or not this contention is correct depends entirely upon the nature of the contract under review. As before stated, the Oakland, Antioch & Eastern Railway took over the property of the Oakland & Antioch Railway subject to a mortgage, and as part of the transaction agreed to 'pay the interest . . . on the bonded indebtedness . . . and . . . perform all the covenants . . . of the mortgage or deed of trust securing the bond issue'. By this clause of the agreement under the rule adopted in this and many other jurisdictions the Oakland, Antioch & Eastern Railway assumed the obligation of the Oakland & Antioch Railway so far as the payment of the interest on the bonds was concerned, thereby becoming the principal debtor as between the two railway corporations, and the Oakland & Antioch Railway the surety; and if the mortgagee or a beneficiary under the mortgage seeks to enforce its right against the Oakland, Antioch & Eastern Railway, the lessee, it must sue to foreclose the mortgage, and should there be a deficiency it may pursue the lessee therefor. This rule is based on the ground that a creditor is entitled to enforce all collateral obligations for the payment of his debt which

a person standing in the situation of a surety for others holds for his indemnity. The application of this principle is made possible by the aid of the doctrine of equitable subrogation, under which the lessee, by the assumption of the debt has become, as to the lessor, the principal debtor, the lessor occupying thereafter the position of surety." A petition to have this case heard in the Supreme Court, after decision in the District Court of Appeal, was denied.

The case of *Roberts* v. *Fitzallen*, 120 Cal. 482 [52 Pac. 818], also involved the same contention that a separate instrument by which the grantee of a mortgagor assumed the mortgage indebtedness was an independent contract separate from the note and mortgage. It was urged that action on it was barred by the statute of limitations. The Supreme Court disposed of this contention as follows: "The liability of the grantee in such a case is the indebtedness secured to be paid by the mortgage. But it must be enforced by foreclosure; and a deficiency judgment may be entered against him only upon the security—the mortgaged premises —becoming exhausted. (Code Civ. Proc., sec. 726; *Biddel* v. *Brizzolara*, 64 Cal. 362 [30 Pac. 609]; *De Costa* v. *Comfort*, 80 Cal. 507 [22 Pac. 218]; *Thomson* v. *Bettens*, 94 Cal. 82 [29 Pac. 336]; *Williams* v. *Naftzger*, 103 Cal. 438 [37 Pac. 411], and cases there cited; *Tulare County Bank* v. *Madden*, 109 Cal. 314 [41 Pac. 1092]. See, also, *McKean* v. *German etc. Sav. Bank*, 118 Cal. 334 [50 Pac. 656].) It necessarily results that the statute of limitations must run against the mortgage obligation, for that is the grantee's liability; and not against the promise to pay the mortgage as a new and independent agreement."

A somewhat similar situation was before the court in the case of *Bogart* v. *George K. Porter Co., supra,* where the court held that the grantee's promise to pay could not be disassociated or treated separately from the original debt.

We are of the conclusion that the contract of January 23, 1933, cannot be independent and separate from the note secured by the deed of trust and that no action can be maintained on it alone. It must be regarded as a modification of the original obligation. Consequently the plaintiffs can only recover in appropriate proceedings to foreclose the deed of trust. (Sec. 726, Code Civ. Proc.; *Bank of Italy National Trust & Sav. Assn.* v. *Bentley*, 217 Cal. 644 [20

Pac. (2d) 940]; *Brink* v. *Benton,* 131 Cal. App. 275 [21 Pac. (2d) 455].)

The order appealed from is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1935.

Preston, J., voted for a hearing.